**In re the COMMITMENT OF Daniel ALMAGUER.**

No. 09–02–172–CV.

Court of Appeals of Texas, Beaumont.

Submitted July 28, 2003.
Decided Sept. 25, 2003.

Ken Balusek, State Counsel for Offenders, Huntsville, for appellant.

Autumn Lewis, Special Prosecution Unit-Civil Division, Huntsville, for appellee.

Before McKEITHEN, C.J., BURGESS and DAVID B. GAULTNEY, JJ.

## OPINION

DAVID B. GAULTNEY, Justice.

The State filed a petition seeking to involuntarily civilly commit appellant Daniel Almaguer as a sexually violent predator. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 841.001–841.147 (Vernon 2003). Almaguer's prior sexually violent offenses were two convictions for aggravated sexual assault of a child. Both offenses were committed on July 1, 1986, against two minor children younger than nine. Almaguer pleaded guilty to both offenses and received a sentence in each case of twenty years, to run concurrently. There was evidence in the record that Almaguer had sexually assaulted the children at least ten times. The State's expert testified that

Almaguer is a psychopath likely to reoffend, suffers from pedophilia and an antisocial personality disorder, and has difficulty controlling his urges. A jury found Almaguer suffers from a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence. He raises four issues on appeal.

Almaguer first argues Chapter 841 is unconstitutional because it is punitive in nature. He relies on the factors set forth in *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168–69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). We have considered and rejected similar complaints before. *See In re Commitment of Martinez*, 98 S.W.3d 373 (Tex.App.-Beaumont 2003, pet. filed); *Beasley v. Molett*, 95 S.W.3d 590, 607–08 (Tex.App.-Beaumont 2002, pet. filed); *In re Commitment of Mullens*, 92 S.W.3d 881, 883–84 (Tex.App.-Beaumont 2002, pet. filed). Issue one is overruled.

■ In issue two, Almaguer contends his due process rights were violated when the trial court refused his requested instruction to the jury on the issue of volitional control. The trial court submitted to the jury the following question and definitions that track subsections (2) and (5) of section 841.002 of the Act:

> Do you find that Daniel Almaguer suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence?
>
> BEHAVIORAL ABNORMALITY means a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person.
>
> PREDATORY ACT means an act that is committed for the purpose of victimization and that is directed toward:
>
> (A) a stranger;

> (B) a person of casual acquaintance with whom no substantial relationship exists; or
>
> (C) a person with whom a relationship has been established or promoted for the purpose of victimization.

TEX. HEALTH & SAFETY CODE ANN. § 841.002(2),(5) (Vernon 2003). The jury instruction proposed by Almaguer and rejected by the trial court stated, "There must be proof of serious difficulty in controlling behavior." The State maintains a separate instruction is not needed, because volitional control is implicitly included within the issue submitted to the jury.

■ A trial court must submit "such instructions and definitions as shall be proper to enable the jury to render a verdict." *See* TEX.R. CIV. P. 277; *Union Pac. R.R. Co. v. Williams*, 85 S.W.3d 162, 166 (Tex.2002). Rule 277 affords the trial court considerable discretion in deciding what jury instructions are necessary and proper. *See State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 451 (Tex.1997). An instruction is proper if it (1) assists the jury, (2) accurately states the law, and (3) finds support in the pleadings and evidence. *See Williams*, 85 S.W.3d at 166. An instruction that is merely a phase or shade of the controlling issue does not have to be submitted to the jury. *See Sheldon L. Pollack Corp. v. Falcon Indus., Inc.*, 794 S.W.2d 380, 383 (Tex.App.-Corpus Christi 1990, writ denied). An error in refusing a jury instruction is reversible only if it "probably caused the rendition of an improper judgment." *See Williams*, 85 S.W.3d at 166.

■ When, as here, a case is governed by a statute, the jury charge should track the language of the statutory provision as closely as possible. *See Toennies v. Quantum Chem. Corp.*, 998 S.W.2d 374, 377 (Tex.App.-Houston [1st Dist.] 1999), *aff'd*,

47 S.W.3d 473 (Tex.2001). And Rule 277 requires the trial court, "whenever feasible," to submit the cause on broad-form questions. *See* Tex.R. Civ. P. 277. Here, the charge tracked the language of the statute, broad-form submission was used, and definitions were submitted to assist the jury in answering the question of whether Almaguer is a sexually violent predator. We find no separate instruction was needed.

In *Kansas v. Hendricks*, the Supreme Court upheld the constitutionality of the Kansas Sexually Violent Predator Act, a statute similar to the one enacted by the Texas Legislature. *See Kansas v. Hendricks*, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997). The Court observed that a person's liberty interest from physical restraint is not absolute, and there are "manifold restraints to which every person is necessarily subject for the common good." *Id.*, 521 U.S. at 357, 117 S.Ct. 2072 (quoting *Jacobson v. Massachusetts*, 197 U.S. 11, 26, 25 S.Ct. 358, 49 L.Ed. 643 (1905)).[1] As Chief Justice Burger stated in his concurring opinion in *O'Connor v. Donaldson*, "There can be little doubt that in the exercise of its police power a State may confine individuals solely to protect society from the dangers of significant antisocial acts or communicable disease." *Donaldson*, 422 U.S. 563, 582–83, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975). In that vein, the Court in *Hendricks* explained, "States have in certain narrow circumstances provided for the forcible civil detainment of people who are unable to control their behavior and who thereby pose a danger to the public health and safety." *Hendricks*, 521 U.S. at 357, 117 S.Ct. 2072.

The Kansas Sexually Violent Predator Act establishes procedures for the civil commitment of individuals, who, because of a mental abnormality or personality disorder, are likely to engage in predatory acts of sexual violence. *Hendricks*, 521 U.S. at 350, 117 S.Ct. 2072. The Act "requires a finding of future dangerousness, and then links that finding to the existence of a 'mental abnormality' or 'personality disorder' that makes it *difficult, if not impossible, for the person to control his dangerous behavior.*" *Id.* 521 U.S. at 358, 117 S.Ct. 2072. (emphasis added). The Court held that the Kansas Act's coupling of proof of dangerousness with the proof of some additional factor, such as mental illness or mental abnormality, serves to "limit involuntary civil confinement to those who suffer from a volitional impairment rendering them dangerous beyond their control." *Id.* The Court found that the statutory criteria, and the evidence of Hendricks' condition satisfying those criteria, complied with due process. *Id.*, 521 U.S. at 360, 117 S.Ct. 2072.

Five years later, in *Kansas v. Crane*, the Court again was asked to consider an issue relating to involuntary commitment under the Kansas Act: Must the State *always* prove that a dangerous individual is *completely* unable to control his behavior? *See Kansas v. Crane*, 534 U.S. 407, 411, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002). The "inability to control behavior" construct came from *Hendricks*, where the Court stated the Kansas Act required proof that it is difficult, if not impossible, for the person to control himself. *Hendricks*, 521 U.S. at 358, 117 S.Ct. 2072. In *Crane*, the

---

1. For example, in earlier cases the Court held that involuntary quarantine for contagious diseases and a requirement of mandatory vaccinations do not violate due process. *See Jacobson v. Massachusetts*, 197 U.S. 11, 25, 29, 25 S.Ct. 358, 49 L.Ed. 643 (1905) (manda-tory vaccination for smallpox); *see also Compagnie Francaise De Navigation a Vapeur v. Louisiana State Bd. of Health*, 186 U.S. 380, 22 S.Ct. 811, 46 L.Ed. 1209 (1902) (permitting involuntary quarantine of persons suffering from communicable diseases).

State of Kansas argued that a showing of lack of control was not required, while Crane argued the State must show a total lack of control. *Crane,* 534 U.S. at 411, 122 S.Ct. 867. And the State also argued that a volitional abnormality should not be the only dangerous abnormality which may justify commitment. *See Crane,* 534 U.S. at 414, 122 S.Ct. 867.

*Crane* held that the State did not have to show a total lack of behavioral control in order to civilly commit a person as a sexually violent predator. *Id.,* 534 U.S. at 411, 122 S.Ct. 867. But the Court disagreed with the State "insofar as it [sought] to claim that the Constitution permits commitment of the type of dangerous sexual offender considered in *Hendricks* without *any* lack-of-control determination." *Id.,* 534 U.S. at 412, 122 S.Ct. 867.

It is this language in *Crane* that prompts Almaguer to argue there must be a separate jury finding on "serious difficulty in controlling behavior." In *Crane,* the Supreme Court explained the difficulty-in-controlling-behavior language in *Hendricks.* The Kansas Supreme Court had misconstrued *Hendricks* as requiring absolute lack of control. *Crane,* 534 U.S. at 411, 122 S.Ct. 867. *Crane* did not mandate a separate jury instruction on "control," and the majority made no mention of the need for a new instruction or even additional jury findings. Nor did the Court declare the Kansas Act unconstitutional as written. But *Crane* did say that proof of "serious difficulty in controlling behavior" is required under circumstances like those considered in *Hendricks*—a "volitional" abnormality case. *Id.* at 413, 122 S.Ct. 867. And *Crane* attempted to clarify the "difficult, if not impossible," language set out in *Hendricks* as follows:

> The word 'difficult' indicates that the lack of control to which [the *Hendricks* case] referred was not absolute. In-

deed, as different *amici* on opposite sides of this case agree, an absolutist approach is unworkable. Moreover, most severely ill people—even those commonly termed 'psychopaths'—retain some ability to control their behavior. Insistence upon absolute lack of control would risk barring the civil commitment of highly dangerous persons suffering severe mental abnormalities.

*Crane,* 534 U.S. at 411–12, 122 S.Ct. 867 (citations omitted). The Court in *Crane* further observed as follows:

> [W]e did not give to the phrase "lack of control" [in *Hendricks*] a particularly narrow or technical meaning. And we recognize that in cases where lack of control is at issue, the 'inability to control behavior' will not be demonstrable with mathematical precision. It is enough to say that there must be *proof of serious difficulty in controlling behavior.* And this, when viewed in light of such features of the case as the *nature of the psychiatric diagnosis,* and the *severity* of the mental abnormality itself, must be sufficient to distinguish the dangerous sexual offender whose *serious* mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case.

*Id.,* 534 U.S. at 413, 122 S.Ct. 867 (emphasis added).

The Court in *Crane* rejected the bright-line rules advocated by Crane and the State in favor of a case-specific analysis. *Id.,* 534 U.S. at 411–413, 122 S.Ct. 867. The Court gave two reasons for this approach. First, states retain considerable leeway in defining the mental abnormalities and personality disorders that make an individual eligible for commitment. And second, the science of psychiatry is an "ever-advancing science, whose distinctions

do not seek precisely to mirror those of the law." *Id.,* 534 U.S. at 413, 122 S.Ct. 867. The nature or type of proof is subject to change as the field of psychiatry advances.

The Supreme Court said it had no opportunity to decide, in *Crane* or *Hendricks,* whether confinement based solely on an "emotional" abnormality would be constitutional. *Crane,* 534 U.S. at 415, 122 S.Ct. 867. Citing two earlier cases, *Crane* does point out that "when considering civil commitment," the Court ordinarily does not distinguish "for constitutional purposes among volitional, emotional, and cognitive impairments." *Id.,* 534 U.S. at 415, 122 S.Ct. 867 (citing *Jones v. United States,* 463 U.S. 354, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983), and *Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979)).

We understand *Crane,* and the cases cited in *Crane,* to focus the constitutional analysis on the seriousness of the abnormality and the seriousness of the danger to society posed by the abnormality, and not fundamentally on the nature of the abnormality as "volitional, emotional or cognitive." If the abnormality is volitional as in *Hendricks,* proof of a serious difficulty in controlling behavior helps distinguish the dangerous sexual offender whose abnormality subjects him to civil commitment from the typical recidivist criminal. The "control" evidence is viewed in the light of other factors in the case such as the severity of the abnormality and the nature of the diagnosis. *Crane,* 534 U.S. at 413, 122 S.Ct. 867. But the due process analysis remains focused on distinguishing a person who because of serious behavioral abnormality poses a serious danger, from a person who, though free of such a condition, is dangerous for reasons more appropriately dealt with through the criminal laws.

The statutory criteria submitted to the jury under the Texas statute in this case describes the severity of the behavioral abnormality and the severity of the danger which must be present to subject the person to civil commitment. The statutory definition describes behavior caused by an abnormality that makes the person a menace to the health and safety of another person. *See* § 841.002(2). In answering the question submitted to it, the jury found that Almaguer suffers from a behavioral abnormality that "predisposes" him, and makes him "likely," to engage in a predatory act of sexual violence, to the extent that he is a menace to the health and safety of another. *See* §§ 841.002(2), 841.003.

The Austin court of appeals recently considered this jury submission issue in *In re Commitment of Browning,* 113 S.W.3d 851 (Tex.App.-Austin, 2003, no pet. h.). There, Browning claimed the trial court erred in refusing to submit a jury question asking whether he had serious difficulty controlling his behavior. The Austin Court of Appeals held that the "broad-form submission encompassed the required lack-of-control determination" and explained its holding as follows:

A finding that a person suffers from an emotional or volitional defect so grave as to predispose him to threaten the health and safety of others with acts of sexual violence entails a determination that he has 'serious difficulty in controlling behavior.'

We conclude here also the broad-form submission encompassed a lack-of-control determination.

■ The jury here implicitly determined Almaguer's behavioral abnormality results in serious difficulty with control: he has an emotional or volitional defect so grave as to cause behavior that makes him a menace. *See id; In re Thorell,* 149

Wash.2d 724, 72 P.3d 708, 718–719 (2003); *Westerheide v. State,* 831 So.2d 93, 107–08 (Fla.2002); *In re Luckabaugh,* 351 S.C. 122, 568 S.E.2d 338, 341, 348–349 (S.C. 2002).; *In re Cain,* No. 275 Ill.Dec. 325, 327-28, 341 Ill.App.3d 480, 482-83, 792 N.E.2d 800, 802-03 (Ill.5th, 2003); *In re Laxton,* 254 Wis.2d 185, 647 N.W.2d 784, 794–95 (2002); *but see Thomas v. State,* 74 S.W.3d 789, 791–92 (Mo.2002). The requested jury instruction simply would have emphasized one aspect of this case already implicit in the broad-form question and statutory definitions. A trial court does not err in refusing to submit an instruction on the law which is already encompassed in the instructions and question.

Almaguer argues further that *Crane* requires a finding that the person's volitional capacity is affected, not solely his emotional capacity. He says the definition of "behavioral abnormality," and the question posed to the jury, allowed the jury to find him to be a sexually violent predator on the basis of an emotional abnormality without finding lack of control. We disagree. A condition which affects either emotional capacity or volitional capacity to the extent a person is predisposed to threaten the health and safety of others with acts of sexual violence is an abnormality which causes serious difficulty in behavior control.

Almaguer also argues that his requested instruction is necessary because the submitted definition of "behavioral abnormality" does not specify how much lack of control is needed. Again, we disagree. The definitions and question make clear that a person must have a behavioral abnormality that predisposes the person to commit sexually violent acts, and that the abnormality makes it probable that the person will commit such acts in the future and be a menace to health and safety. The definitions and question make clear

that the condition must be serious, and explain how serious. We conclude the trial court did not err in refusing to submit Almaguer's requested instruction. *See In re Browning,* 113 S.W.3d at 862. Issue two is overruled.

In issue three, Almaguer contends Chapter 841 is unconstitutionally vague and violates the separation of powers doctrine because of subparts (a)(4),(5), and (9) of section 841.082. He contends subpart 4 is unconstitutionally vague, because it requires the person's participation in a "specific course of treatment" without specifying the treatment. He argues subpart 5 is also vague, because it requires the person to "submit to tracking under a particular type of tracking service and to any other appropriate supervision" without specifying what places the person cannot go, what conduct is expected of him, and the meaning of "any other appropriate supervision." Finally, he asserts subpart 9 is vague and violates the separation of powers doctrine, because it allows the trial judge to impose any requirement determined necessary. We have considered these arguments in prior cases and rejected them. *In re Commitment of Shaw,* 117 S.W.3d 520, 522, (Tex.App.-Beaumont 2003, no pet. h.); *In re Commitment of Morales,* 98 S.W.3d 288 (Tex.App.-Beaumont 2003, pet. filed); *Beasley,* 95 S.W.3d at 608–609; *Mullens,* 92 S.W.3d at 887–888. We overrule issue three.

Almaguer also asserts section 841.085 and the final judgment violate the Fifth Amendment privilege against self-incrimination, because the commitment order requires Almaguer to submit to periodic polygraph examinations. We rejected this argument in *Mullens. See* 92 S.W.3d at 888. We overrule issue four.

The judgment of the trial court is affirmed.

AFFIRMED.

DON BURGESS, Justice, dissenting.

I concur except as to issue two; the trial court's refusal of a jury instruction requiring proof of "serious difficulty in controlling behavior." I believe *Kansas v. Crane*, 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002), requires, upon proper request, such a submission.

In *Crane*, the United States Supreme Court determined "there must be proof of serious difficulty in controlling behavior." *Crane*, 534 U.S. at 413, 122 S.Ct. 867. The Court vacated the Kansas Supreme Court's judgment and remanded the case for further proceedings. *Crane*, 534 U.S. at 415, 122 S.Ct. 867. Clearly concluding that the *Crane* majority was requiring a lack-of-control determination by the factfinder, Justices Scalia and Thomas, the *Crane* dissenters, objected in part because they thought it would be too difficult to instruct a jury as the majority was requiring.[1] *Crane*, 534 U.S. at 423, 122 S.Ct. 867.

Subsequently, jurisdictions have reached varying conclusions in applying *Crane* to challenges to SVP statutes.[2] As the majority does here, some jurisdictions have concluded a jury necessarily finds a defendant lacks the requisite control when the State links the individual's mental disorder and dangerousness. *See In re Luckabaugh*, 351 S.C. 122, 568 S.E.2d 338, 349 (2002) ("Inherent within the mental abnormality prong of the Act is a lack of control determination...."); *In re Laxton*, 254 Wis.2d 185, 647 N.W.2d 784, 793 (2002)(concluding proof of the nexus between the individual's mental disorder and dangerousness "necessarily and implicitly involves proof that the person's mental disorder involves serious difficulty for the person to control his or her behavior").

But at least one jurisdiction has concluded, to be constitutional under *Crane*, jury instructions must require that the "degree" to which a person cannot control his or her behavior is "serious difficulty." *Thomas v. State*, 74 S.W.3d 789, 792 (Mo. 2002). To comply with *Crane*, the Missouri Supreme Court mandated the instruction defining mental abnormality should read: "As used in this instruction, 'mental abnormality' means a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to commit sexually violent offenses in a degree *that causes the individual serious difficulty in controlling his behavior.*" *Id.*

Another jurisdiction has remanded a case for a "lack of control" determination without mandating specific language to be used by the trial court. *In re Commitment of W.Z.*, 173 N.J. 109, 801 A.2d 205, 219 (2002). And, yet another jurisdiction, while determining *Crane* does not require a specific jury instruction, also concluded jurors would not understand the link between the individual's mental disorder and a serious difficulty in controlling behavior without additional instructions. *In re Leon G.*, 204 Ariz. 15, 59 P.3d 779, 788 (2002). In *Leon*, the Arizona Supreme

---

1. Justice Scalia wrote: "Today's opinion says that the Constitution requires the addition of a third finding: (3) that the subject suffers from an inability to control behavior-not utter inability, *ante*, at 870, and not even inability in a particular constant degree, but rather inability in a degree that will vary 'in light of such features of the case as the nature of the psychiatric diagnosis, and the severity of the mental abnormality itself,' *ante*, at 870." *Crane*, 534 U.S. at 423, 122 S.Ct. 867.

2. *See* Peter C. Pfaffenroth, *The Need for Coherence: States' Civil Commitment of Sex Offenders in the Wake of Kansas v. Crane*, 55 STAN. L.REV. 2229, 2248 (2003).

Court, thus, directed trial judges to instruct juries in future SVP proceedings as follows:

> The State must prove, beyond a reasonable doubt, that the person has a mental disorder that makes it highly probable that the person will engage in future acts of sexual violence. A finding of dangerousness, standing alone, is not a sufficient ground to determine an individual is a sexually violent person. An individual's dangerousness must be caused by a mental disorder which, in turn, causes the person to have serious difficulty in controlling his or her behavior.

*Id.*

I agree with the Missouri and New Jersey Supreme Courts and with Justices Scalia and Thomas that *Crane* requires the fact finder in an SVP commitment proceeding to determine whether the individual has "serious difficulty in controlling his or her behavior." As *Crane* has mandated that constitutional due process requires such a determination in commitment proceedings, state laws or rules of procedure are superseded by this directive. U.S. CONST. art. VI, cl. 2 ("This Constitution ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby. . . .").

Although appellant does not argue that our State procedures and case law would require submission of his instruction, both the State and the majority address that issue and, thus, compel me to do likewise.

I am convinced the trial court here should have allowed Almaguer his instruction under the Texas Rules of Civil Procedure.

Rule 277 requires the trial court, "whenever feasible" to submit the cause on broad-form questions. *See* TEX.R. CIV. P. 277. Here, under the trial court's use of broad form submission, the State maintains both that the volitional control issue was included in the question asking the jury to determine if the appellant has a behavioral abnormality and that the jury's "yes" answer to this question demonstrates the jury found Almaguer has difficulty controlling his behavior.

Rule 277 also requires the trial court to "submit such instructions and definitions as shall be proper to enable the jury to render a verdict." TEX.R. CIV. P. 277.[3] While a trial court has considerable discretion in submitting broad-form jury questions, the questions must properly submit the controlling fact issues for the jury's determination. *See Interstate Northborough Partnership v. State*, 66 S.W.3d 213, 224–25 (Tex.2001); *Triplex Communications, Inc. v. Riley*, 900 S.W.2d 716, 718 (Tex.1995)("If an issue is properly pleaded and is supported by some evidence, a litigant is entitled to have controlling questions submitted to the jury."). A trial court reversibly errs when it denies a party proper submission of a valid theory of recovery or a vital defensive issue raised by the pleadings and evidence. *Exxon Corp. v. Perez*, 842 S.W.2d 629, 631 (Tex. 1992).

Noting that trial judges must provide jury instructions explaining the applicable law in terms the jury can readily understand, the Arizona Supreme Court found the reasoning of the *Laxton* dissent persuasive: " 'Although the words of [Wisconsin's SVP statute] might be interpreted by lawyers and judges to include a link between the mental disorder and a serious difficulty in controlling behavior, the jury instructions based directly on the language

---

**3.** The Texas Supreme Court observed that broad form submission under Rule 277 is not absolute and suggested that broad-form submission may not be feasible when the governing law is unsettled. *Westgate, Ltd. v. State*, 843 S.W.2d 448, 455 n. 6 (Tex.1992).

of [Wisconsin's SVP statute] do not set forth this link for non-lawyers.'" *In re Leon G.*, 59 P.3d at 788 (quoting *Laxton*, 647 N.W.2d at 798). The Arizona Supreme Court further reasoned:

> Given the important interests involved in SVP proceedings for both the state and the individual, no question should arise as to whether the jury understands the importance of finding that a mental disorder, rather than a voluntary decision to engage in repetitive criminal behavior, renders a person dangerous within the meaning of the SVP statute.

*In re Leon G.*, 59 P.3d at 788. I agree.

Here, whether Almaguer has a serious difficulty in controlling his behavior is a controlling fact issue under *Crane*. Thus, the trial court reversibly erred in not submitting Almaguer's volitional control instruction to the jury. *Perez*, 842 S.W.2d at 631; *Commercial Bank of Texas, N.A. v. Luce*, 92 S.W.3d 636, 640 (Tex.App.-Beaumont 2002, no pet.).

I would sustain issue two, and reverse and remand for a new trial.