In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-15-00068-CV
_____

IN RE COMMITMENT OF GEORGE JEFFERSON HATCHER

On Appeal from the 435th District Court
Montgomery County, Texas
Trial Cause No. 14-04-04629 CV

## MEMORANDUM OPINION

The State of Texas filed a petition to commit George Jefferson Hatcher (Hatcher) as a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2014) (SVP statute). A jury found that Hatcher is a sexually violent predator, and the trial court rendered a final judgment and an order of civil commitment. Hatcher filed an appeal.

In his sole appellate issue, Hatcher argues that the trial court erred by overruling Hatcher's objection to the jury charge and failing to instruct the jury that a "no" finding does not require a unanimous verdict.

1

A trial court's decision to refuse a particular instruction in its charge is reviewed for an abuse of discretion. *Thota v. Young*, 366 S.W.3d 678, 687 (Tex. 2012). A trial court may refuse to give a requested instruction or definition that is not necessary to enable the jury to render a verdict, even if the instruction or definition is a correct statement of the law. *In re Commitment of Taylor*, No. 09-10-00231-CV, 2010 Tex. App. LEXIS 9505, at *6 (Tex. App.—Beaumont Dec. 2, 2010, no pet.) (mem. op.).

Section 841.062(b) states that "[a] jury determination that the person is a sexually violent predator must be by unanimous verdict." Tex. Health & Safety Code Ann. § 841.062(b) (West 2010). In the jury charge, the jury was asked to answer the following question "Do you find beyond a reasonable doubt that GEORGE JEFFERSON HATCHER is a sexually violent predator?" The jury instructions included the following:

> 6. Answer "yes" or "no" to the question. A "yes" answer must be based on a belief beyond a reasonable doubt. If you do not find beyond a reasonable doubt that the evidence supports a "yes" answer, then answer "no." Your verdict must be unanimous. That means that all 12 of the jurors must agree upon the answer made and to the verdict.

At trial, Hatcher objected to the proposed jury charge, arguing as follows:

> THE COURT: . . . Has Respondent had a sufficient period of time to view the Charge prepared?

2

[Appellant's counsel]:    Yes, Your Honor.

THE COURT:    Do you have any objections?

[Appellant's counsel]:    Yes, Your Honor.

THE COURT:    You may proceed with your objections.

[Appellant's counsel]:    The only objection is Number Six in the Jury Charge. Respondent would like to change the wording to answer yes or no to the question. A yes answer must be based on a belief beyond a reasonable doubt. If you do not find beyond a reasonable doubt that the evidence supports a yes answer, then answer no. A yes answer must be unanimous. That means that all 12 of the jurors must agree to a yes answer. A no answer may be made if ten jurors agree to it.

THE COURT:    May be what?

[Appellant's counsel]:    May be made if ten jurors agree to it.

THE COURT:    Any response to that?

[State's counsel]:  Well, I think what [appellant's counsel] is getting at is the Statute just says a yes answer must be unanimous. I think the implication is a verdict in this case, either way, must be unanimous.

THE COURT: That's my understanding of the law. Is that not the law? Do you have a case that says you are right?

[Appellant's counsel]:    Well, Your Honor, my understanding --

THE COURT:    Do you or do you not?

[Appellant's counsel]:    There has not been a case to examine the question --

THE COURT:    Very well. Your objection is overruled. . . .

Hatcher also included the requested instruction in his written proposed jury charge. The jury answered, "Yes" to the jury question and the Verdict Certificate under the jury's answer stated, "Our verdict is unanimous. All 12 of us have agreed to the answer. The presiding juror has signed the certificate for all 12 of us." Prior to reading the verdict, the trial court stated, "[a]nd all 12 of you agree on whatever that verdict is, is that likewise correct?" The presiding juror answered, "Yes." Immediately after the trial court read the jury verdict and stated it was signed by the presiding juror, the trial court stated, "So say you all? I see assent from all 12 jurors."

On appeal, Hatcher contends that Section 841.062(b) is silent as to the requirements for a verdict that a person is not a sexually violent predator, and that the plain meaning of the statute is clear—only a finding that a person is a sexually violent predator has to be by a unanimous verdict. Hatcher maintains that because the statute is silent as to the requirements for the jury to find a person not to be a sexually violent predator, Rule 292 of the Texas Rules of Civil Procedure applies and a finding of "no" does not require a unanimous verdict. Hatcher cites to *In re Commitment of Tesson*, 413 S.W.3d 514 (Tex. App.—Beaumont 2013, pet. denied), and *Taylor v. State*, 671 S.W.2d 535 (Tex. App.—Houston [1st Dist.] 1983, no writ), in support of his argument. According to Hatcher, the trial court

4

erred in overruling his requested instruction because the requested instruction was "reasonably necessary" for the jury to properly determine whether he was a sexually violent predator. Hatcher argues that the trial court's omission of this instruction caused the rendition of an improper verdict because "[w]ithout the instruction, the jury was unaware that they could reach a 'no' finding without a unanimous verdict, so long as 10 of them agreed to that verdict."

The State argues on appeal that Hatcher failed to preserve error because he "never gave the trial court any basis for his argument[]" regarding the instruction and that "[t]his lack of specificity . . . resulted in waiver." The State further argues that, even if Hatcher preserved error, any error was harmless. Hatcher maintains that his objection to the instruction was sufficient to preserve error on appeal. "A party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection. Any complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections." Tex. R. Civ. P. 274. There is only one test for "determining if a party has preserved error in the jury charge, and that is whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling." *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992). Here, because Hatcher made the trial court

aware of this complaint, timely and plainly, and obtained a ruling, we conclude that he preserved error regarding the instruction. *See id.*; *see also* Tex. R. App. P. 33.1(a).

A trial court must submit "such instructions and definitions as shall be proper to enable the jury to render a verdict." *See* Tex. R. Civ. P. 277; *Union Pac. R.R. Co. v. Williams*, 85 S.W.3d 162, 166 (Tex. 2002); *In re Commitment of Almaguer*, 117 S.W.3d 500, 502 (Tex. App.—Beaumont 2003, pet. denied). Rule 277 affords the trial court considerable discretion in deciding what jury instructions are necessary and proper. *See Almaguer*, 117 S.W.3d at 502 (citing *State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 451 (Tex. 1997)). An instruction is proper if it (1) assists the jury, (2) accurately states the law, and (3) finds support in the pleadings and evidence. *See id.* (citing *Williams*, 85 S.W.3d at 166). An error in refusing a jury instruction is reversible only if it "probably caused the rendition of an improper judgment." *See id.*

When a case is governed by a statute, the jury charge should track the language of the statutory provision as closely as possible. *See id.* (citing *Toennies v. Quantum Chem. Corp.*, 998 S.W.2d 374, 377 (Tex. App.—Houston [1st Dist.] 1999), *aff'd*, 47 S.W.3d 473 (Tex. 2001)). Section 841.062(b) provides that "[a] jury determination that the person is a sexually violent predator must be by

6

unanimous verdict." Tex. Health & Safety Code Ann. § 841.062(b) (West 2010).

The instruction in question stated:

> 6.    Answer "yes" or "no" to the question. A "yes" answer must be based on a belief beyond a reasonable doubt. If you do not find beyond a reasonable doubt that the evidence supports a "yes" answer, then answer "no." Your verdict must be unanimous. That means that all 12 of the jurors must agree upon the answer made and to the verdict.

The challenged instruction informs the jury that its verdict and answer "must be unanimous." It then states that all "12 jurors must agree upon the answer made and to the verdict." Therefore, it instructs the jury that whether the answer is "yes" or "no" the answer must be unanimous. While we agree that the instruction could be rephrased to more closely track the statute and instruct the jury that the jury's determination that the person is a "sexually violent predator" must be unanimous, even if we determine that the trial court's failure to precisely track the statutory language was error, we must also determine whether such error requires a reversal of the judgment on the record in this case. *See* Tex. R. App. P. 44.1. Rule 278 provides that "[a] judgment shall not be reversed because of the failure to submit other and various phases or different shades of the same question." Tex. R. Civ. P. 278. Rule 44 of the appellate rules provides that "[n]o judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of: (1) probably caused the rendition

7

of an improper judgment; or (2) probably prevented the appellant from properly presenting the case to the court of appeals." Tex. R. App. P. 44.1(a); *see also Almaguer*, 117 S.W.3d at 502. We look to the entire record to determine whether the jury charge probably caused an improper judgment. *Transcon. Ins. Co. v. Crump*, 330 S.W.3d 211, 225 (Tex. 2010).

At trial, the State bore the burden of proving that Hatcher is a sexually violent predator. *See* Tex. Health & Safety Code Ann. § 841.062. A "sexually violent predator" is a person who is a repeat offender and suffers from a behavioral abnormality. *Id.* § 841.003(a) (West Supp. 2014). The jury heard Hatcher's admissions to the State's requests for admissions wherein Hatcher admitted pleading guilty in 1980 of burglary of a habitation with intent to commit rape. Hatcher also admitted to pleading guilty in 2006 to indecency with a child, by sexual contact, one count of aggravated sexual assault of a child, and one count of aggravated sexual assault of a child. His victims were M.H. and K.H.[1] He received a ten-year sentence for each of the 2006 convictions with the sentences to run concurrently.

---

[1] We identify the victims by using initials. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims the "right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

The trial court granted a directed verdict on the issue of whether Hatcher is a repeat sexually violent offender, leaving the jury to determine whether Hatcher has a behavioral abnormality, i.e., a congenital or acquired condition that, by affecting Hatcher's emotional or volitional capacity, predisposes him to commit a sexually violent offense, such that he becomes a menace to the health and safety of another, and that makes him likely to engage in a predatory act of sexual violence. *Id.* §§ 841.002(2); 841.003(a)(2).

Dr. Darrel Turner, a clinical psychologist, testified for the State. Turner testified that, based on his education, training, experience, and the methodology that he followed in this case, he formed an opinion that Hatcher suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Turner explained his methodology for assessing a behavioral abnormality, which he testified is the methodology followed by experts with training in forensic psychology who do the same type of evaluations. He stated that in reaching his opinion, he reviewed offense reports, law enforcement narratives, some of the interviews with victims, medical records, and depositions. Turner testified that he conducted an interview of Hatcher and that the interview was conducted in accordance with Turner's training as a forensic psychologist.

9

Turner explained that he relied on Hatcher's sexual offense history in determining that Hatcher suffers from a behavioral abnormality. According to Turner, "it's an insight into [Hatcher's] behaviors, his sexual preference, his sexual deviance, . . . how much he's willing to victimize others to satisfy those needs[]," and "[i]t paints a good picture of certain risk factors, degree of violence and things like that." Turner testified that Hatcher's first sexually-related conviction was for an offense in 1980 when Hatcher was in his twenties. Turner explained that the records indicated that Hatcher broke into a house through a window, climbed on top of a woman who was lying in her bed, told her to stop screaming, rubbed on her vaginal area, and then left. According to Turner, when he asked Hatcher during the interview about the offense, Hatcher admitted breaking into the house, but initially Hatcher stated that he did not touch the woman. Hatcher later admitted he had been drinking and pushed the woman, but he denied having the intent to rape her. Turner explained that Hatcher's "gradual admission" as the interview went on is "a pattern of responding that is common among sex offenders that are denying an offense."

Turner explained that the other sexual offense convictions were for acts against Hatcher's daughters, M.H. and K.H., when Hatcher was in his fifties. According to Turner the records he reviewed indicate that Turner sexually

offended against M.H. from the time she was three years old until she was fourteen years old, when she reported the abuse. Turner testified that Hatcher admitted gagging her and tying her down during some of the sexual offenses, but "only admitted [to Turner] a very small portion of what he was convicted of." Turner testified that, during the interview, Hatcher explained "it as [sic] though it was [M.H.'s] fault" and that "[h]e said she was hitting on [him] . . . that she was sexually attracted to him and that she would parade through the house in skimpy clothing in an effort to attract him sexually[,]" and that M.H. would initiate the sexual contact. Turner explained that although Hatcher admitted to indecency with M.H. by contact, he denied the aggravated sexual assault and has not accepted responsibility for the offenses against M.H.

Turner testified that the records indicate that Hatcher offended against his daughter, K.H., for about a year when she was seven or eight years old. According to Turner, the records indicated that Hatcher was accused of but never convicted for numerous other offenses with numerous other victims over many years, including male and female pre-pubescent relatives.

Turner diagnosed Hatcher with pedophilia or pedophilic disorder, antisocial personality disorder, and cocaine abuse or cocaine dependence in sustained remission in a controlled environment. Turner explained that the fact that Hatcher

11

described M.H. as initiating the sexual contact and that he blamed M.H. was evidence of "antisocial behavior, sexual deviance, psychopathic personality traits[,]" showing "huge risk factor[s]." Turner stated that the fact that Hatcher told both of his daughters not to tell anyone about the offenses and that Hatcher made threats against the children indicates "antisocial personality characteristics, . . . psychopathic personality characteristics, sexual deviance, . . . violence [and] classical grooming behavior." Turner explained that pedophilia or pedophilic disorder is a "generally lifelong" condition. According to Turner, the fact that Hatcher offended against his "own daughters into his fifties" and over several years and the fact that Hatcher "doesn't really see it as a deviance[]" is "strong evidence to suggest that this is an ongoing attraction."

Turner testified that Hatcher has the following risk factors for reoffending: he has numerous sex offenses, he has offended against "stranger victims[,]" he continued to offend after being convicted and serving time for his sex offense, he is a psychopath with a high degree of antisocial personality characteristics, he offended against family members as well as non-family members and had child victims and adult victims, he is sexually preoccupied, he is willing to offend at a later age, he has sexual deviance and pedophilia, the violent nature of his offenses, he blames his victims, he has a lack of insight into the reasons for his behaviors,

12

and that his future plans are to travel from state to state teaching children and families about Christ while fixing used appliances. Turner explained that normally the fact that Hatcher has been married and lived with a marital partner for a period of time would be a protective factor, but "he was physically abusive to most of his wives[,] . . . was at least accused of molesting each of his daughters and admits to having sex with 2,500, what he calls, crack whores." Turner testified that normally Hatcher's age would be a protective factor, but it is not a protective factor when considering he was willing to offend at such a later age. Also, Turner stated that normally the fact that Hatcher had no male victims would be a protective factor but here, although Hatcher had no convictions for offenses against male victims, the records indicated he had also been accused of sexually molesting a thirteen-year-old boy. Turner testified that Hatcher has not received sex offender treatment because he was removed from the program after he made a suicidal gesture and was sent to a psychiatric unit. Turner does not believe Hatcher understands why he committed his sexual offenses.

Dr. Sheri Gaines, a psychiatrist, also testified for the State. She explained she reviewed records including Turner's multidisciplinary treatment review, prison records, police records, victims' statements, prison disciplinary records, and prison medical records. She diagnosed Hatcher with pedophilic disorder, antisocial

personality disorder, and substance-use disorder in remission in a controlled environment. When asked if Hatcher says that he is not sexually attracted to children and does not have sexual fantasies about them or that prison has cured that, Gaines responded that "[i]t's highly unlikely that that is accurate. The only way you know whether someone has sexual attraction towards anybody or anything is if they act on it or if they tell you about it. Mr. Hatcher, obviously, has an ulterior motive to not tell us about it, but he has clearly acted on it." According to Gaines, Hatcher has not fully acknowledged his sexual deviance and does not understand why he has sexually offended. Gaines testified that, based on her education, training, experience, and the methodology that she followed in this case, she formed an opinion that Hatcher suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

The State also called Hatcher to testify. Hatcher testified that he may not have had sex with 2,500 people but that it was "just thousands[]" and "it may not even be that much." He testified that his first offense occurred in 1980 when he entered the victim's apartment through a bathroom window at night and laid on top of the victim, who was asleep in her bed. Hatcher admitted at trial that he "got excited," he told her he wanted to have sex with her, she asked him to stop, and he

14

stopped "because [he] wasn't in there to rape her[,]" and he told her to be quiet and stay still until he "could get out the door."

Hatcher testified he did not "touch [M.H.] until she was already 13, 14 years old." According to Hatcher, M.H. would put his hand on her breast and he would rub her breast and that on four or five other occasions he would be "cutting up with her" and "it lead one thing to another[.]" Hatcher denied gagging M.H. while he was touching her and he stated that he "covered her mouth with [his] hand playing with her[]" and "didn't gag her[]" or hurt her. Hatcher admitted telling M.H. that she was sexy when she was "13 or 14[.]" Hatcher denied offending against K.H. and testified that when she was eleven he was joking with her, cupped his hand on her, and said "you're next[]" and [t]hat's all [he] did." Hatcher admitted having sexual intercourse with his first wife's sister when the sister was thirteen or fourteen and he was eighteen or nineteen. He testified that he fondled his first wife's brother's genitals when the boy was thirteen, which during his earlier deposition and interviews with Turner and Gaines he had denied. He admitted at trial that he started using cocaine in his twenties and began using cocaine intravenously when he was in his late forties or early fifties. He acknowledged that he has received at least nine disciplinaries during his current incarceration, and seven of those were characterized as major cases. He testified that he has never

requested sex offender treatment and he believes he has been cured and that he is no longer a sex offender and does not need sex offender treatment.

Our review of the entire record demonstrates that the evidence in this case was not so sharply conflicting as to warrant reversal. *See Crump*, 330 S.W.3d at 226; *see also Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 480 (Tex. 2001). Furthermore, the record does not indicate that, had the instruction included the language requested by Hatcher or otherwise been changed to more closely track the language of section 841.062(b), the verdict would have been different. Under the facts of this case, we cannot say that the form of the instruction probably caused the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a). We overrule Hatcher's issue. We affirm the trial court's judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on July 15, 2015
Opinion Delivered November 5, 2015

Before Kreger, Horton, and Johnson, JJ.