In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-13-00130-CV

_____

IN RE COMMITMENT OF JEFFERY BRIAN CHAPPELL

On Appeal from the 435th District Court
Montgomery County, Texas
Trial Cause No. 12-05-05202-CV

MEMORANDUM OPINION

BACKGROUND FACTS

Jeffery Brian Chappell ("Chappell") appeals from the judgment and order of

civil commitment rendered by the trial court after a jury found Chappell to be a

"sexually violent predator." *See* Tex. Health & Safety Code Ann. § 841.001-

841.151 (West 2010 & Supp. 2013) ("the SVP statute").

Chappell is a convicted sex offender who is also deaf.[1] The record indicates that he attended several different schools as a child, that he completed the eighth grade, that he can read and write the English language, that he can speak some words on a limited basis, that his preferred means of communication is sign language, and that his secondary means of communication is by written word. During each stage of the civil proceeding below, certified sign language interpreters were utilized at trial to interpret the statements of the trial judge, the witnesses, and the attorneys, and Chappell was provided his own individual sign language interpreter to sit with Chappell and assist with communication during the trial. Furthermore, the trial court granted Chappell's request for a "real time" court reporter and transcription of the proceedings.

Chappell raises three issues on appeal. In his first two issues, he challenges the legal and factual sufficiency of the evidence. In his third issue, he complains about the trial court's pretrial ruling that denied his motion to control the pace of the questions and answers of the witnesses at trial. In his pretrial motion to control the pace, Chappell requested that the trial court require a pause after each question and each answer so that he could then use sign language to confer with his attorney. We affirm.

---

[1]Chappell also lost an arm in an accident when he was nine years old.

## THE CRIMINAL CONVICTIONS

In 1995, Chappell pleaded guilty to, and was convicted of, three counts of aggravated sexual assault of two children, B.M. and D.G., both under the age of fourteen. In Chappell's responses to Requests for Admissions, Chappell also admitted to another conviction. For each sexual assault, Chappell received a twenty-year sentence. In 1995, Chappell was also convicted of indecency with a child by exposure. At the time of the civil commitment trial, Chappell was serving his twenty-year sentences for the two aggravated sexual assaults.

## THE SVP STATUTE

Alleging that Chappell is a "sexually violent predator," the State instituted an involuntary civil commitment proceeding. A person is a "sexually violent predator" subject to commitment if the person: "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." Tex. Health & Safety Code Ann. § 841.003(a) (West 2010). A "behavioral abnormality" is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2) (West Supp. 2013). "A condition which affects either emotional

3

capacity or volitional capacity to the extent a person is predisposed to threaten the health and safety of others with acts of sexual violence is an abnormality which causes serious difficulty in behavior control." *In re Commitment of Almaguer*, 117 S.W.3d 500, 506 (Tex. App.—Beaumont 2003, pet. denied). The inability to control behavior "must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case." *Kansas v. Crane*, 534 U.S. 407, 413, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002).

## SUFFICIENCY OF THE EVIDENCE

In his first two issues, Chappell contends there is legally and factually insufficient evidence to support "the jury's verdict that [he] currently suffers from a 'condition' or has serious difficulty controlling his behavior." *See In re Commitment of Mullens*, 92 S.W.3d 881, 885 (Tex. App.—Beaumont 2002, pet. denied) (legal sufficiency standard of review). We disagree.

Chappell contends Dr. Sheri Gaines, the State's expert, provided no scientific basis for her opinion that Chappell currently is displaying symptoms of pedophilia to the extent he is emotionally or volitionally impaired and likely to engage in a predatory act of sexual violence. Chappell contends the State failed to

4

prove that he is likely to engage in a predatory act for the primary purpose of victimization, and that the State failed to meet *Kansas v. Crane*'s requirement that the State prove that he is more dangerous than the typical recidivist in an ordinary case. *See Crane*, 534 U.S. at 413.

To prevail on his legal sufficiency issue, Chappell is required to demonstrate that no evidence supports the jury's finding. *See Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex. 1983); *Christus St. Mary Hosp. v. O'Banion*, 227 S.W.3d 868, 873 (Tex. App.—Beaumont 2007, pet. denied). Under the SVP statute, the State must prove, beyond a reasonable doubt, that "the person is a sexually violent predator." Tex. Health & Safety Code Ann. § 841.062(a) (West 2010). "[T]he burden of proof at trial necessarily affects appellate review of the evidence." *In the Interest of C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). Because the SVP statute employs a beyond-a-reasonable-doubt burden of proof, when reviewing the legal sufficiency of the evidence, we assess all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find, beyond a reasonable doubt, the elements required for commitment under the SVP statute. *In re Commitment of Mullens*, 92 S.W.3d at 885.

Under a factual sufficiency review, we weigh the evidence to determine "whether a verdict that is supported by legally sufficient evidence nevertheless

5

reflects a risk of injustice that would compel ordering a new trial." *In re Commitment of Day*, 342 S.W.3d 193, 213 (Tex. App.—Beaumont 2011, pet. denied) (factual sufficiency standard of review). Since the State's burden of proof in an SVP case is beyond a reasonable doubt, the risk of injustice is necessarily slight when the evidence admitted at trial is legally sufficient to support the jury's verdict. *Id*. However, "if in the view of the appellate court after weighing the evidence, the risk of an injustice remains too great to allow the verdict to stand, the appellate court may grant the defendant a new trial." *Id.*

Chappell testified that he sexually assaulted his live-in girlfriend's "nine or ten" year old son, B.M., for over a year. One of the sexual offenses against B.M. occurred after Chappell attended four to six months of therapy in Houston to deal with his sexual urges. Chappell also admitted to sexually assaulting D.G., B.M.'s "eight or nine" year old friend. Chappell further testified he was convicted of exposing himself to M.M., B.M.'s "[f]ive or six" year old brother. Chappell acknowledged that in his prior statement to the sheriff's office he admitted he was a sex addict and that he had touched ten to fifteen children. During the commitment trial, Chappell admitted to sexual offenses against several other children, in addition to those against B.M., M.M., and D.G.

Nevertheless, Chappell testified he does not believe he is a sex offender or that he needs sex offender treatment. He admitted to receiving approximately twenty disciplinary write-ups while he was incarcerated (none for sexual misconduct). During his testimony before the jury and in interviews with the State's expert, Chappell blamed the children and victims for the crimes he committed.

Dr. Gaines, a forensic psychiatrist, testified for the State. She testified that Chappell has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Dr. Gaines diagnosed Chappell with pedophilia non-exclusive type and sexual deviancy. According to Dr. Gaines, pedophilia is a "chronic life-long condition" and "[t]here's no indication that pedophilia is going to go away."

Dr. Gaines's methodology involved an analysis and review of Chappell's records and an interview with Chappell. She reviewed his statements and deposition, details of his offenses, victim and witness statements, expert reports and depositions, and Chappell's prison records. Dr. Gaines interviewed Chappell with the assistance of a sign language interpreter. She testified that she and Chappell were able to communicate effectively through the interpreter.

Dr. Gaines identified Chappell's risk factors for reoffending as follows: he is sexually deviant; he has had male and female victims; he performed multiple acts on each of his victims; he committed the sexual acts against his victims over a minimum of seventeen years; he sexually offended against at least one victim in a public restroom; he threatened victims and their family members if they reported the crimes; he "groomed" his victims; he exhibited a lack of genuine remorse; he never completed a comprehensive sex offender treatment program; he still blames his victims; and he has had victims outside of his family. Dr. Gaines recognized that Chappell had some factors that could be interpreted as positive: his age (62 years old), family support, some income upon release from prison, and a history of some past employment. Nevertheless, Dr. Gaines indicated that such positive factors did not outweigh all of the other factors or change her opinion that Chappell currently suffers from a "behavioral abnormality" that makes him "likely to commit a predatory act of sexual violence."

Dr. Gaines testified that Chappell does not have an understanding of his offense cycles and triggers, and without that understanding it is unlikely Chappell will be able to prevent himself from reoffending. She testified that it was significant that Chappell continues to allege that he was pressured by the children to sexually offend against them, which is an indication he would be at a high risk

for reoffending. Additionally, Dr. Gaines explained that, in determining whether a person currently has a behavioral abnormality, repetitive and recurrent past behavior is a good indicator of future behavior.

Testifying for the defense, Dr. Saunders, a forensic psychologist, explained he had interviewed Chappell and reviewed records to aid in making a determination as to whether Chappell suffers from a behavioral abnormality. Dr. Saunders testified at trial that he felt he was generally able to effectively communicate with Chappell through the use of an interpreter. Saunders diagnosed Chappell with pedophilic behaviors in the past with dependent personality features.

Dr. Saunders testified that Chappell does not currently have a behavioral abnormality. Saunders explained he based his opinion on a combination of factors: there is a low risk of reoffending for someone of Chappell's age; Chappell acknowledged that his sexual offenses were wrong; Chappell did not report any deviant sexual arousal to children; Chappell stated he would avoid reoffending; and Chappell had a favorable institutional adjustment while he was incarcerated. Saunders testified that Chappell admitted to the offenses of which he was convicted, but denied any other sexual offenses. Saunders acknowledged he was unaware that Chappell previously admitted to having touched at least nine other children, and if that information was true, it could alter his opinion.

Dr. Saunders also indicated he could not say for sure that Chappell would not sexually reoffend in the future and that there is no one test that can definitively determine whether a person has a behavioral abnormality. Dr. Saunders agreed that "pedophilia" was a reasonable diagnosis to make and that the multidisciplinary team diagnosis was also reasonable. He also agreed that past behavior is a good predictor of future behavior, and that the details of a person's prior offenses were important facts in determining whether the person suffers from a behavioral abnormality. However, he disagreed with Dr. Gaines's conclusion that Chappell currently suffers from a behavioral abnormality. Although the experts reached different conclusions about Chappell, they employed similar, recognized methodologies.

To the extent Chappell now argues on appeal that Dr. Gaines was not qualified to give her expert opinion in this case, Chappell did not raise that issue at trial and in fact conceded to the trial court that he "didn't actually challenge [Dr. Gaines's] qualifications to testify." Therefore, that issue was not preserved for appellate review. *See* Tex. R. App. P. 33.1(a).

Next, the Court rejects Chappell's argument that the State was required to establish "victimization" as a separate issue or element. In *In re Commitment of Bernard*, No. 09-10-00462-CV, 2012 Tex. App. LEXIS 4681 (Tex. App.—

10

Beaumont June 14, 2012, pet. denied) (mem. op.), we explained that the concept of "victimization" is implicit in the definition of "behavioral abnormality" and assumes a victim. *See Bernard*, 2012 Tex. App. LEXIS 4681, at **6-7. We have previously explained that the "primary purpose of victimization" is not a specified element in section 841.003. *In re Commitment of Simmons*, No. 09-09-00478-CV, 2011 Tex. App. LEXIS 4500, at **1-2 & n.1 (Tex. App.—Beaumont June 16, 2011, no pet.) (mem. op.); *In re Commitment of Chapa*, No. 09-10-00334-CV, 2011 Tex. App. LEXIS 9798, at *11 (Tex. App.—Beaumont Dec. 15, 2011, no pet.) (mem. op.). As stated by the Texas Supreme Court, "whether a person 'suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence' is a single, unified issue." *In re Commitment of Bohannan*, 388 S.W.3d 296, 303 (Tex. 2012), *cert. denied*, 133 S.Ct. 2746 (2013) (quoting Tex. Health & Safety Code Ann. § 841.003(a)(2)).

In our disposition of issues one and two, we conclude the record contains legally and factually sufficient evidence to support the jury verdict in this case. Dr. Gaines diagnosed Chappell's condition and opined that Chappell suffers from a behavioral abnormality that makes him likely to commit predatory acts of sexual violence. The jury heard evidence of Chappell's many risk factors, including, but not limited to, his repeated sexual offenses, the diagnosis of pedophilia, and his

11

continued attempts to blame the children he assaulted. Dr. Gaines's testimony was not so conclusory as to be completely lacking in probative value. *See In re Commitment of Burnett*, No. 09-09-00009-CV, 2009 Tex. App. LEXIS 9930, at *14 (Tex. App.—Beaumont Dec. 31, 2009, no pet.) (mem. op.).

Furthermore, the jury was entitled to draw reasonable inferences from basic facts to determine ultimate facts, and to resolve conflicts and contradictions in the evidence by believing all, part, or none of a witness's testimony. *See Lacour v. State*, 8 S.W.3d 670, 671 (Tex. Crim. App. 2000); *In re Commitment of Mullens*, 92 S.W.3d at 887. Chappell's difficulty in controlling his behavior can be inferred from his past behavior, his own testimony, and Dr. Gaines's testimony. *See In re Commitment of Burnett*, 2009 Tex. App. LEXIS 9930, at *13; *In re Commitment of Wilson*, No. 09-08-00043-CV, 2009 Tex. App. LEXIS 6714, at *14 (Tex. App.—Beaumont Aug. 27, 2009, no pet.) (mem. op.). The evidence is sufficient to show that Chappell's inability to control his behavior distinguishes him from the "typical recidivist convicted in an ordinary criminal case." *See Crane*, 534 U.S. at 413. Reviewing all the evidence in the light most favorable to the verdict, a rational jury could have found, beyond a reasonable doubt, that Chappell is a sexually violent predator who is likely to commit predatory acts of sexual violence. *See In re Commitment of Mullens*, 92 S.W.3d at 887. After weighing the evidence, we

12

conclude that the verdict does not reflect a risk of injustice that would compel ordering a new trial. *See In re Commitment of Day,* 342 S.W.3d at 213. We overrule issues one and two, because the evidence is legally and factually sufficient to support the jury's verdict.

CONSTITUTIONAL CHALLENGE

In his third and final issue, Chappell argues the trial court erred by denying Chappell's pre-trial "Motion to Control or Slow Pace of Trial to Ensure Access to Attorney and Effective Representation" (hereinafter "motion to control"). Chappell maintains that the trial court's denial of the motion to control created a "constitutional structural error" and violated his right to counsel under the Sixth Amendment of the United States Constitution and Article I, Section 10 of the Texas Constitution. *See* U.S. Const. amend. VI; Tex. Const. art. I, § 10.

SVP cases are civil cases. *In re Commitment of Fisher*, 164 S.W.3d 637, 653 (Tex. 2005). The SVP statute expressly provides that the Office of State Counsel for Offenders shall represent an indigent respondent in an SVP case, or the trial court can appoint other counsel if the Office of State Counsel for Offenders is unable to represent the person. Tex. Health & Safety Code Ann. § 841.005 (West 2010). The right to counsel, contained in the Sixth Amendment of the United States Constitution and Article I, Section 10 of the Texas Constitution, is not at

13

issue in this case and our courts have not yet decided whether a respondent in a civil commitment proceeding has a "constitutional right to counsel" under the United States Constitution or the Texas Constitution.[2] It is unnecessary to decide that issue in this case for the following reasons: the trial court followed the SVP statute, the State provided Chappell with an attorney from the Office of State Counsel for Offenders, Chappell has not challenged the statutory provision, Chappell has not alleged that his counsel was incompetent or inadequate, and he does not otherwise voice any complaint about his defense. Assuming without deciding that such "constitutional right to counsel" may exist in the context of this SVP proceeding, we conclude that Chappell has no basis for his contention that the denial of the motion to control constituted a denial of his "right to counsel."

To the extent Chappell contends that the court's denial of his motion to control interfered in some unspecified manner with his ability to communicate with his attorney at the trial, the record does not support his contention. In his argument

---

[2]The constitutional right to counsel has been held to be a fundamental right of criminal defendants. *See Gideon v. Wainwright*, 372 U.S. 335, 344 (1963); *Powell v. Alabama,* 287 U.S. 45 (1932). But the constitution does not afford the right to every person in every proceeding. *See Turner v. Rogers*, 131 S.Ct. 2507, 2515-20 (2011); *Lassister v. Dep't of Social Servs.*, 452 U.S. 18, 26-31 (1981); *see also Ex parte Gonzales*, 945 S.W.2d 830, 836 (Tex. Crim. App. 1997).

14

to the trial court, Chappell explained that he wanted a pause and delay after every question so that he could "then indicate if he need[ed] to communicate with his attorney for effective assistance of counsel . . . in all phases of trial." His prayer in the motion to control asked for the court to grant the motion "to protect his constitutional right to counsel and order that Respondent have the time to communicate with his attorney through his interpreter after every question and answer during the trial."

Although the trial court denied the motion to control, the trial court granted Chappell's motion for appointment of an interpreter during all proceedings, including trial. Moreover, the record indicates that five American Sign Language interpreters appeared at the trial, and one of the five interpreters was specifically assigned to sit with Chappell during the trial and to assist him with communication with his attorney or to otherwise communicate any concerns. Furthermore, the trial court granted an order to allow Chappell and his attorney to have real-time transcription of the trial testimony and proceedings during the trial. Additionally, the trial court informed Chappell's counsel at the hearing on the motion to control that the pace of the trial would be slow enough for Chappell to communicate with counsel. The trial court advised Chappell that "[if] it starts going too fast, you tell

me." Before the trial began, the trial court notified the parties again that Chappell could "easily take a recess any time it's needed."

Despite such instructions, Chappell, his attorney, and his interpreter never made any objections or complaints during the trial about the actual pace of the questions or answers. Furthermore, at no time during the trial did Chappell or his attorney ever complain that Chappell was having difficulty communicating or understanding the process. Therefore, Chappell has waived this point. *See* Tex. R. App. P. 33.1(a).

Nevertheless, even if Chappell had preserved the objection, Rule 611(a) of the Texas Rules of Evidence provides that "[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." Tex. R. Evid. 611(a). Based on the record before us, we conclude that the trial court exercised reasonable control over the mode and order of interrogation of the witnesses and the presentation of the evidence at trial.

This is a civil case, not a criminal one. Thus, the criminal rules pertaining to the accommodation of a deaf defendant are not applicable here. Yet these rules are

16

instructive. For example, in criminal proceedings a trial judge is required to provide an interpreter for a deaf person to interpret "in any language that the deaf person can understand, including but not limited to sign language." Tex. Code Crim. Proc. Ann. art. 38.31(a) (West Supp. 2013). In criminal cases, "the trial court has a duty to devise a communication solution that provides the particular defendant with 'that minimum level' of understanding that is constitutionally required." *Linton v. State*, 275 S.W.3d 493, 501 (Tex. Crim. App. 2009) (footnote omitted). Courts have approved methods of communication with a deaf person that may "include the use of sign language, finger spelling, lip reading, written communication, or stenographers to provide simultaneous transcriptions, or a combination of these methods, depending [on] a person's proficiency in the different systems of communication." *Id.* (footnote omitted). As long as a translation is true and accurate, it is sufficient. It does not need to be perfect. *Id.* at 501-02. The Court of Criminal Appeals has stated that "decisions regarding interpretive services are within the sound discretion of the trial court." *Id.* at 503 (footnote omitted).

We hold that the trial court judge did not abuse his discretion in denying the pretrial motion to control and did not deprive Chappell of his right to access to his attorney. Accordingly, we overrule issue three. The judgment is affirmed.

17

AFFIRMED.

                                _____

                                    LEANNE JOHNSON
                                        Justice

Submitted on December 13, 2013
Opinion Delivered January 23, 2014

Before McKeithen, C.J., Kreger and Johnson, JJ.