**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-14-00444-CV**
_____

**IN RE COMMITMENT OF BRUCE LUNA**

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 14-03-03235 CV**

**MEMORANDUM OPINION**

The State of Texas filed a petition to commit Bruce Luna (Luna) as a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2014) (SVP Act). A jury found that Luna is a sexually violent predator, and the trial court rendered a final judgment and an order of civil commitment. Luna timely filed a notice of appeal.

In five appellate issues, Luna challenges the legal and factual sufficiency of the evidence supporting the jury's finding that he has a behavioral abnormality and also challenges the admission of certain evidence and testimony. We affirm the trial court's judgment.

THE EVIDENCE AT TRIAL

Admissions by Luna

The jury heard Luna's admissions to the State's requests for admissions wherein Luna admitted pleading guilty in 2000 to two counts of aggravated sexual assault against two children, P.J. and S.J.; both children were younger than fourteen years of age at the time of the assaults.[1] Luna was placed on deferred adjudication. Luna admitted that he viewed child pornography while on probation and subsequently the court found he had violated the terms and conditions of his probation, he was convicted of the aggravated sexual assault charges, and he received a ten-year sentence for each charge. Luna also admitted to pleading guilty in 2008 to the failure to register as a sex offender, and he was convicted and received a two-year sentence.

The jury also heard Luna's admission to having engaged in sexual conduct with P.J. when she was twelve and thirteen years old, with S.J. when she was ten and eleven years old, and with P.J. and S.J.'s sister when she was younger than thirteen years old. He admitted that his sexual contact with the children ranged

---

[1] We identify the victims by using initials that disguise their identities. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims the "right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

from "more than 10 occasions" to "more than 25 occasions." He also admitted that he had sexual contact with a five-year-old girl when he was seventeen years old. He further admitted that in 2007, he viewed child pornography depicting children between the ages of two and five years of age and also depicting prepubescent children and that he has sexual thoughts and urges involving sexual activity with prepubescent children. Luna admitted he is a sex offender.

Testimony of Luna

Luna testified that at the time of the civil commitment trial he was incarcerated for two convictions for aggravated sexual assault, serving ten-year concurrent sentences on each conviction, and that his sentences will discharge in 2017. He agreed that the victims he was convicted of offending against were his stepdaughters. He agreed he was "using the girls to try to get back with [their mother]" after he and the mother had separated.

He testified that he started having sexual thoughts about his stepdaughter P.J. when she was twelve years old. He described his offense against P.J., which included watching her take a shower and making sexual contact with her with his finger and his mouth. He agreed he groomed P.J. and that he was sexually aroused before and after sexual contact with her. He agreed he told P.J. not to tell anyone because "her mother would get in trouble with the police[.]" At trial, he agreed he

performed oral sex on P.J. about thirty times, but when asked about having previously indicated that it was as many as fifty or 100 times, he responded "[t]hat was for the sake of polygraph during treatment." He testified that his sexual offending against P.J. lasted about a year.

Luna also testified he sexually offended against P.J.'s younger sister S.J., that he started having sexual thoughts about S.J. when she was nine years old, and he agreed he "used grooming behaviors" with S.J. "[t]o get her to comply with what [he] wanted her to do." He described his offense against S.J., which included watching her take a shower and sexual contact with her with his hands, his mouth, and his penis. He testified that he had sexual contact with S.J. thirty to thirty-five times. When asked about having previously indicated that he exposed himself to S.J. approximately 100 times, he responded "that was for the polygraphs." He testified that the sexual offending against S.J. went on for approximately eighteen months and that "this behavior" with P.J. and S.J. went on for at least two-and-a-half years. Luna also testified that P.J. and S.J. had another sister, who was around twelve or thirteen years old whom he watched in the shower ten to twelve times and also that he "[l]ifted up her panties and viewed her vagina."

He agreed that he was placed on ten years' deferred adjudication for the offenses against P.J. and S.J. and that, as a condition of probation, he was not

permitted to have contact with anyone younger than seventeen years old, he was not allowed to be in areas where children would congregate, he was required to register as a sex offender, and he was required to participate in sex offender treatment. He testified that he married a woman while he was on probation. He was not allowed to live in the same house with his wife because her two children lived with her, but he testified that he would sometimes go to her house on weekends. He agreed he did not disclose his marriage to his treatment provider or his probation officer.

He testified that he started sex offender treatment in 2000 and received individual and group therapy from the Counseling Institute of Texas. He agreed that in 2004 his probation officer made him switch to Central Psychological Services (Central Services) because Luna had not disclosed his marriage. He testified that he did not find the treatment by Central Services helpful, and he was discharged from treatment by Central Services in July of 2007. He explained the reason he stopped treatment at Central Services because he failed to register as a sex offender and he committed another crime, including looking at child pornography, which was a violation of his probation. He testified that in June of 2007 he took an overdose of sleeping pills and he was hospitalized on an inpatient basis at a mental health facility for a week, and following his release, he

voluntarily readmitted himself at the same facility. He agreed that, after he was released from the facility, he went to stay with his wife for a couple of weeks, but he did not update his sex offender registration. He also agreed that he was arrested for failure to register as a sex offender and his probation was revoked.

A copy of a handwritten statement Luna gave to the police in July of 2007 was admitted into evidence, and the State cross-examined Luna about the statement. Luna agreed that in his statement he wrote that he looked at child pornography on his home computer, including some involving children aged two to five, and that he used the internet "'to find pictures of young-looking girls.'" He testified that the requirements of his probation were "[r]egistering, safety zones, not going within a certain distance of where people congregate, counseling, just not being around children." He stated he did not get in trouble for not following the terms of his probation prior to 2007, but he stated that he failed to register in 2007 because "I just got depressed and I gave up. Just -- I gave up on life. I didn't really care what happened to me, so I just didn't do anything."

Luna testified that, at the time of trial, he was in a nine-month sex offender treatment program, but he stated he was not going to finish the program in the nine-month time period and his deadline had been extended twice. He agreed that he had received two informal write-ups in connection with the sex offender

treatment for not attending group sessions and not turning in some assignments. He testified that he had not received any disciplinaries while in prison other than the write-ups for not attending group.

Luna explained to the jury that he was not going to reoffend after release from prison because he did not want to and he had the tools not to, including calling treatment providers and talking with his parole officer or a family member. He also stated that his depression was "under control right now." However, he admitted that he still has sexual urges regarding children but that he "deal[s] with them." He also agreed that he is currently attracted to prepubescent females, that he has fantasized about rape, and that he is sexually aroused by fantasies of his 2010 victims. He agreed he was responsible for what happened to P.J. and S.J. and for how his life has turned out.

Testimony of Dr. Arambula

Dr. Michael Arambula, a board-certified forensic psychiatrist, testified for the State. Based on his training, his experience, the records he reviewed, and his interview with Luna, Arambula believes Luna suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

Arambula explained his methodology for assessing a behavioral abnormality, which he testified is the methodology followed by experts with

forensic training who do the same type of evaluations. He stated that in reaching his opinion, he reviewed legal records associated with Luna's convictions, including the facts of his sexual offenses, administrative records from prison, notes concerning his treatment, a previous psychological evaluation of Luna, and deposition testimony of Luna, of himself, and of Dr. Mauro (who served as a defense expert). Arambula explained he relied on the records of the history of Luna's sexual offenses "to understand how an illness starts and behaves over time[]"and "to know [] the clinical course of the illness[.]"

In reviewing the details of Luna's offenses against P.J., Arambula testified that it appeared to him that "[P.J.] was being used as maybe a substitute for [Luna's] wife that he had been separated from[]" and the activity "progressed[]." Arambula testified that Luna told him P.J. "was easier to control . . . and he perceived that she wouldn't make an outcry and get them into trouble." Arambula also stated that the treatment notes indicated Luna started having sexual fantasies about P.J. when P.J. was about nine years old. Arambula stated that Luna told him he offended against P.J. one or two times, but that the records indicated a much larger number of incidents. Arambula explained that he has learned that when a person has a sexually deviant condition, it interferes with that person's ability to

objectively report what they have done, and they are going to minimize what they have done, which is "part of the illness."

Arambula testified that the details of Luna's offenses against S.J. showed an "escalation of what he did with her, even though she was younger [than P.J.]" Arambula said that Luna admitted to some but not all of his sexual conduct with S.J. When asked the significance of Luna's admitting certain sexual conduct with S.J. at trial but then refusing to admit to the conduct in his clinical interview, Arambula explained that this was consistent with what he had seen in notes, and that Luna would "tell some about his history, but he won't tell all until somebody confronts him." Arambula also testified that the discrepancy between Luna's rendition of what happened and the victims' accounts indicated to Arambula that Luna was "still early in treatment[.]"

Arambula testified that he reviewed Luna's treatment notes from 2000, which indicated Luna was "secretive about what was going on[,]" and that he would keep things from his group members and therapist. Arambula said he considered Luna a treatment failure with respect to his treatment at two facilities between 2000 and 2004 because there was an issue of Luna accessing child pornography, Luna did not turn in assignments timely, Luna kept things from

others, Luna was not compliant with treatment, and Luna's discharge notes reflect that Luna had very limited insight.

Arambula gave Luna a diagnosis of pedophilia, which Arambula testified is a sexual deviance. According to Arambula, Luna's sexual deviance is broader than the acts for which he was convicted. Arambula explained that sexual deviance and pedophilia are chronic conditions but they may lessen with time. Arambula identified certain signs and symptoms that indicate Luna's sexual deviance is still present and currently exists, such as Luna's denial and minimization, as well as the fact that Luna admits to still having deviant fantasies. Arambula testified that the type of pornography that Luna admits he looked at was significant because child pornography is "pathologic" and illegal, and accessing child pornography was symptomatic of Luna's illness. In Arambula's opinion, Luna does not yet know how to control his pedophilic sexual deviance. Arambula testified that Luna's history with polysubstance abuse seemed to be in remission, although Arambula regarded it as an aggravating factor because "any time an individual is intoxicated, then it tends to reduce their inhibitions[,]" which is a danger for someone with sexual deviance.

Arambula also diagnosed Luna with an unspecified personality disorder, with features of narcissism. Arambula explained Luna had done some antisocial

things in the past, and the records also indicated borderline personality. Arambula further testified that Luna has a history of "an unspecified mood disorder[,]" has taken medication for a mood disorder in the past, and when he was hospitalized after an overdose, he was diagnosed with recurrent major depression, but later the diagnosis changed to bipolar disorder unspecified. Arambula explained that a mood disorder together with sexual deviance is significant because "if the mental condition becomes active, it's going to aggravate this. . . . that's when [Luna] started accessing porn and he was very depressed and he just got worse." Arambula testified that Luna has a history of noncompliance with taking his medication for his mood disorder and that Luna was not taking his medication when he sexually offended and when he accessed child pornography.

Arambula stated that Luna had a good adjustment to prison and in prison he did not get into a lot of trouble. Arambula noted that Luna has been slow getting sex offender treatment assignments done, that the treatment concepts were still "fuzzy" to Luna, Luna's insight is "not great," and the treatment "hasn't been real positive yet."

Arambula testified that the psychological evaluation he reviewed on Luna was consistent with Arambula's finding that Luna has a behavioral abnormality. The defense objected on the basis of hearsay, and the court responded that

"[e]xperts are allowed to rely on hearsay." The defense requested a running objection and limiting instruction, and the court gave a limiting instruction. Arambula explained that he looked at the results of the Static-99 actuarial performed by a psychologist, and that although Luna's results placed him in the low-risk category, Arambula did not believe this was reflective of Luna's actual risk. Arambula explained that "the actuarials don't look at a history of sexual abuse or misconduct. They only really look at sexual arrests or sex offense convictions," and although Luna offended against P.J. and S.J. "probably well over 100 times[,]" he only has two convictions.[2]

Arambula testified that Luna's greatest risk factor is his sexual deviance. He testified that Luna's history with substance abuse is also a risk factor, although Luna has been in remission for a long time. Arambula testified that Luna's untreated mood disorder was an aggravating risk factor because "[h]is relapse rate is so high and when it occurs again, that can aggravate his underlying sexual deviance." In particular, Arambula noted that one of the symptoms of hypomania

---

[2] The record reflects that Luna was charged with aggravated sexual assault against P.J. for conduct that occurred on November 14, 1998, and he was charged with aggravated sexual against S.J. for conduct that occurred on October 19, 1999. Luna admitted at trial that he had previously stated he offended against P.J. "well over 100 times" and he testified he offended against S.J. thirty to thirty-five times, and that his offenses against both children occurred over what he agreed was a period of "at least about two-and-a-half years." *See infra* at 3-4.

is increased libido, which can make sexual deviance worse. Arambula noted the high number of incidents and the fact that Luna's offending extended over two-and-a-half years were risk factors, as well as the fact that Luna had "failed treatment" twice.

According to Arambula, there were some positive factors that would reduce Luna's risk of reoffending including his stable occupational history, the courses and education Luna pursued in prison, the fact he stayed out of trouble in prison, his low number of antisocial traits, and the fact that Luna has offended only against girls. Arambula testified that Luna's marriage would also be a positive factor if the wife is not an enabler. On cross-examination, Arambula agreed that Luna told Arambula that he did not commit a sexual offense against a child in the seven-and-a-half years between pleading guilty and before his probation was revoked. According to Arambula, from a clinical perspective, even while Luna was in treatment, "he relapsed," accessing pornography and being sexually aroused by sexually deviant thoughts.

Testimony of Joseph Brown

Joseph Brown (Brown), a licensed social worker and Luna's current sex offender treatment provider, testified for the State. Brown testified that Luna was currently in the second phase of a nine-month treatment program, which includes

both individual and group therapy, and that he has been Luna's treatment provider since Luna began the second phase of the program. Brown testified that one of the requirements in the second phase is for each offender to make a group presentation of what life was like at the time they offended, to discuss the offense itself, and to describe how the offense may have affected victims and others. According to Brown, Luna had attempted to present his synopsis twice but Luna was unsuccessful due to Luna's minimization and evasiveness about discussing details of his offenses.

Brown testified that Luna had not given any indication that Luna understands his own offense cycle, that he has not observed Luna showing insight into his offending behavior, that he has not seen Luna demonstrate any recall of things learned from previous treatment, and that Luna's refusal to be forthcoming was hindering his progress in treatment. Brown testified that Luna had received two disciplinaries during the program – one for failure to complete his offense synopsis, and the other for refusal to participate and not going to group – but there was no punishment. Brown stated that he does not believe Luna has internalized the principles of the treatment program and that Luna does not understand his pattern of abusive behavior. According to Brown, Luna did accept responsibility for his offenses and he was hopeful Luna would complete treatment.

Testimony of Dr. Mauro

Dr. Melissa Mauro, a licensed clinical and forensic psychologist and licensed sex offender treatment provider, testified for Luna. She testified that, in her opinion, Luna does not have a behavioral abnormality. She explained that, in forming her opinion, she relied on a four-hour clinical interview she had with Luna, a review of court records, police reports, victim statements, medical and mental health records, a report by another psychologist, sex offender treatment records, records from Luna's probation officer, depositions of Luna, of Dr. Arambula, of herself, three conversations she had with Luna's treatment provider, and actuarials. Mauro agreed that the facts and data she relied on in forming her opinion are those that experts in her field rely on and that her evaluation was in accordance with her training, education, and experience, as well as the accepted standards in her field.

According to Mauro, during her interview with Luna, they discussed his personal history, sexual development history, work history, institutional adjustment, and his offenses and sex offender treatment, which she explained gave her information and data related to a behavioral abnormality and the risk of recidivism. She testified that she found Luna to be "reasonably forthcoming[]" in the interview, admitting to the sex offenses of which he had been convicted and

giving her more details than she had in the records. She testified that she saw "a little bit of positive impression management[]" with Luna, which she explained as "the person is attempting to present themselves in a positive light," and that Luna did give some inconsistences compared with what she had in the records. Mauro testified that she did not believe Luna was being untruthful when he was not forthcoming about details of the offenses, and that he gave her a lot of negative information about himself, which she found significant because it suggested to her that Luna was attempting to be forthcoming and honest. According to Mauro, research has shown that minimization is not a risk factor and it is not relevant to behavior abnormality or recidivism, although it is important to effective treatment.

Mauro testified that she diagnosed Luna with "pedophilic disorder nonexclusive type limited to females, incest only[]" and she agreed that pedophilia is a chronic condition. In her testimony, she explained that the details of Luna's offenses against P.J. and S.J. were evidence of pedophilic disorder. Mauro testified that she did not diagnose Luna with any personality disorder or pathology nor did she see evidence of an antisocial orientation in Luna. She also testified that, while Luna has some symptoms in his history associated with depression, she found no evidence for bipolar disorder nor any evidence that depression or bipolar disorder is predisposing Luna to commit sexually violent offenses. Although Mauro

testified that Luna's pedophilia diagnosis is a "major dynamic factor[,]" she agreed that it is possible for someone to have pedophilia and not have a behavioral abnormality and that the relationship between a paraphilia and sexual recidivism was "statistically small."

Mauro testified that she completed the Static-99R actuarial in evaluating Luna and she also reviewed results of a Static-99R completed by another psychologist. Mauro explained that she gave Luna a score of "negative 1[,]" which she explained was the "lowest category[]" of risk compared with other sex offenders. She further testified that the predictive validity of the Static-99R was much higher than any other form of prediction. Mauro testified she also completed the Static-2002R actuarial, on which Luna's score was a "1" which Mauro explained was a low score with a low risk of recidivism.

Mauro testified that it was significant that Luna was convicted of offenses against stepdaughters because she said research shows that individuals who offend against relatives or against girls are less likely to offend in the future. Mauro explained that, despite the fact that Luna offended against P.J. and S.J. many times, she did not regard Luna as having a behavioral abnormality because, after having been detected and arrested, he complied with probation requirements for seven years, went to sex offender treatment, got remarried, was working, and "he does

not ever reoffend again." She also testified that she had never seen any research showing that the number of times a person offends against a victim is relevant to recidivism. Mauro testified that the probation infractions that resulted in Luna's probation being revoked were not relevant to whether he has a behavioral abnormality because failure to register as a sex offender is not a sex offense and looking at child pornography is not a sexually violent offense. She also explained that "there's no evidence that [Luna] has acted out on another victim since 1998."

Mauro did not see anything in the records suggesting Luna's wife would "enable" him in any way, Mauro thought Luna's records reflected that his wife was willing to cooperate with his treatment providers and potentially with law enforcement, and Mauro regarded Luna's wife's involvement in his life as a protective factor in helping to reduce his risk of reoffending. Mauro also identified the education Luna received in prison as a positive risk factor because it will help him with finding stable employment.

Mauro testified that she had no evidence that Luna's pedophilic disorder affects his emotional or volitional capacity such that it predisposes him to commit a sexually violent offense, and she stated that "[t]he only evidence that there is of his pedophilic behavior in that seven years [after his guilty pleas] is a self-report that he had looked at child pornography."

SUFFICIENCY OF THE EVIDENCE

In issues one and two, Luna contends that the evidence is legally and factually insufficient to support the jury's verdict because Luna "spent seven and a half years in the free world without committing a sexually violent offense before his probation was revoked for a nonviolent offense." Under a legal sufficiency review, we assess all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find, beyond a reasonable doubt, the elements required for commitment under the SVP statute. *In re Commitment of Mullens*, 92 S.W.3d 881, 885 (Tex. App.—Beaumont 2002, pet. denied). It is the factfinder's responsibility to fairly resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.* at 887. Under a factual sufficiency review, we weigh the evidence to determine "whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that would compel ordering a new trial." *In re Commitment of Day*, 342 S.W.3d 193, 213 (Tex. App.—Beaumont 2011, pet. denied).

In an SVP case, the State must prove beyond a reasonable doubt that a person is a sexually violent predator. Tex. Health & Safety Code Ann. § 841.062(a) (West 2010). A person is a "sexually violent predator" if he is a

repeat sexually violent offender and suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *Id.* § 841.003(a) (West Supp. 2014). A "behavioral abnormality" is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2) (West Supp. 2014). "A condition which affects either emotional capacity or volitional capacity to the extent a person is predisposed to threaten the health and safety of others with acts of sexual violence is an abnormality which causes serious difficulty in behavior control." *In re Commitment of Almaguer*, 117 S.W.3d 500, 506 (Tex. App.—Beaumont 2003, pet. denied).

The jury was entitled to draw reasonable inferences from basic facts to determine ultimate fact issues, and to resolve conflicts and contradictions in the evidence by believing all, part, or none of the witnesses' testimony. *In re Commitment of Barbee*, 192 S.W.3d 835, 842 (Tex. App.—Beaumont 2006, no pet.). "[P]roof of serious difficulty in controlling behavior" is required to civilly commit a defendant under the SVP Act. *Kansas v. Crane*, 534 U.S. 407, 413 (2002). Luna's current difficulty in controlling his behavior can be inferred from his past behavior, his own testimony, and Dr. Arambula's testimony. *See In re*

*Commitment of Burnett*, No. 09-09-00009-CV, 2009 Tex. App. LEXIS 9930, at *13 (Tex. App.—Beaumont Dec. 31, 2009, no pet.) (mem. op.). Dr. Arambula's opinion that Luna has a behavioral abnormality, as defined by the SVP Act, necessarily entails a related finding that he has "serious difficulty controlling his behavior." *See Almaguer*, 117 S.W.3d at 505-06; *see also In re Commitment of Browning*, 113 S.W.3d 851, 862-63 (Tex. App.—Austin 2003, pet. denied).

In addition to hearing the details of Luna's offenses, the jury also heard Luna's own testimony concerning his viewing of child pornography and his current sexual thoughts and urges involving sexual activity with young children. In Dr. Arambula's opinion, Luna does not know how to control his pedophilic sexual deviance, Luna's mood disorder could aggravate Luna's sexual deviance, and Luna had made only limited progress in his sex offender treatment. Considering all the evidence in the light most favorable to the verdict, we conclude the jury could reasonably find beyond a reasonable doubt that Luna has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See Mullens*, 92 S.W.3d at 887. The record does not reflect a risk of injustice that compels granting a new trial. *See Day*, 342 S.W.3d at 213. We overrule issues one and two.

EVIDENTIARY CHALLENGES

Admission of Exhibit 6

In his third issue, Luna argues that the trial court erred in admitting Petitioner's Exhibit 6 because its probative value was outweighed by the danger of unfair prejudice. Luna's brief asserts that this exhibit, which disclosed the details of types of pornography Luna accessed while on deferred adjudication, "served no purpose but to infuriate the jury against Mr. Luna."

We review a trial court's decision concerning the admissibility of evidence for an abuse of discretion. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). A trial court abuses its discretion when it acts without reference to any guiding rules and principles, or if it acts arbitrarily and unreasonably. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). An erroneous admission of evidence that is merely cumulative of properly admitted evidence is harmless. *See Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 873 (Tex. 2008). Even if a trial court errs in admitting evidence, we will reverse the judgment only if the error by the trial court probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting the case on appeal. *See* Tex. R. App. P. 44.1(a).

In this case, Luna himself testified that he accessed child pornography while he was on deferred adjudication, and he admitted he viewed pornography that depicted children ages two to five years old and that depicted prepubescent children. In both Dr. Arambula's and Dr. Mauro's testimony, they discussed Luna's use of child pornography. During the State's cross-examination of Dr. Mauro, the following exchange occurred:

[STATE'S ATTORNEY]: And during a treatment session in June of 2007, around June 22nd of 2007, Luna admitted that he had been viewing Internet pornography; is that correct?

[MAURO]: Yes, he did.

[STATE'S ATTORNEY]: Including child pornography?

[MAURO]: Yes, he said that.

[STATE'S ATTORNEY]: And when you interviewed Mr. Luna, you asked him about the reasons his probation was revoked?

[MAURO]: Yes.

[STATE'S ATTORNEY]: And he told you that he had been looking at porn on the Internet?

[MAURO]: Yes, he did.

[STATE'S ATTORNEY]: And you asked him what kind of porn?

[MAURO]: Yes.

[STATE'S ATTORNEY]: And his response was: Group sex, some young girls that looked maybe 13 or 14?

[MAURO]: Yes.

The admission of Exhibit 6 into the record was merely cumulative of other testimony and evidence admitted at trial. Based on the full record before us, we conclude that the admission of Exhibit 6 probably did not cause the rendition of an improper judgment. Tex. R. App. P. 44.1(a). We overrule Luna's third issue on appeal.

Admission of Expert Testimony

In his fourth issue, Luna asserts that the trial court erred in allowing Dr. Arambula's testimony as to information in the records concerning the "graphic details" of Luna's crimes and other alleged offenses as basis evidence. Luna also argues that he was "unable to challenge the accuracy of the basis evidence because he was not given an opportunity to cross examine these out-of-court declarants."

Rule 705(a) of the Texas Rules of Evidence provides that an expert may disclose on direct examination or be required to disclose on cross-examination, the underlying facts or data on which the expert bases an opinion. *See* Tex. R. Evid. 705(a); *Boswell v. Brazos Elec. Power Coop., Inc.*, 910 S.W.2d 593, 602 (Tex. App.—Fort Worth 1995, writ denied). Rule 705(d) provides:

> When the underlying facts or data would be inadmissible in evidence, the court shall exclude the underlying facts or data if the danger that they will be used for a purpose other than as explanation

or support for the expert's opinion outweighs their value as explanation or support or are unfairly prejudicial. If otherwise inadmissible facts or data are disclosed before the jury, a limiting instruction by the court shall be given upon request.

Tex. R. Evid. 705(d) (2014)[3]; *see Day*, 342 S.W.3d at 198-99.

To preserve error concerning the admission of evidence, a party must timely object, stating the specific ground of objection, if the specific ground is not apparent from the context, and obtain a ruling from the court. Tex. R. Evid. 103(a)(1); *see also* Tex. R. App. P. 33.1(a). To the extent Luna argues on appeal that Dr. Arambula's testimony about the details of Luna's offenses was unfairly prejudicial, Luna failed to make that objection at trial and he has waived that objection. *See* Tex. R. Evid. 103(a)(1); Tex. R. App. P. 33.1(a).

During Dr. Arambula's testimony, the trial court granted Luna a running objection as to hearsay and the trial court provided the jury with the following limiting instruction:

THE COURT: The limiting instruction I normally give is that hearsay normally is not admissible. However, certain hearsay information contained in records reviewed by experts is allowed into evidence

---

[3] Effective April 1, 2015, the Texas Supreme Court adopted amendments to the Texas Rules of Evidence. *See* 78 Tex. B.J. 42 (Tex. 2015). The amendments were part of a restyling project that may have changed the wording of some of the evidentiary rules cited in this opinion. *Id.* at 42. All citations to the rules of evidence in this opinion refer to the rules as they existed during the trial of this matter.

through expert testimony. Such evidence is admitted only for the purpose of showing the basis of the expert's opinion.

Luna's brief argues that this limiting instruction did not make it clear that the basis testimony should not come in for its truth. We note that the jury charge also included the following instruction:

> Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered to prove the truth of the matter asserted. Certain hearsay information contained in records reviewed by the experts was admitted before you through expert testimony. Such hearsay was admitted only for the purpose of showing the basis of the experts' opinion and cannot be considered as evidence to prove the truth of the matter asserted.

This Court has previously upheld a trial court's decision to allow an expert to testify about the details of the underlying offenses when the expert uses the details as a basis for his opinion. *See In re Commitment of Alvarado*, No. 09-13-00217-CV, 2014 Tex. App. LEXIS 3343, at \*\*25-29 (Tex. App.—Beaumont Mar. 27, 2014, pet. denied) (mem. op.); *In re Commitment of King*, No. 09-13-00255-CV, 2014 Tex. App. LEXIS 724, \*\*3-7 (Tex. App.—Beaumont Jan. 23, 2014, no pet.) (mem. op.). Dr. Arambula explained the facts he considered in forming his opinion and how those facts affected his evaluation. The trial judge could reasonably conclude the evidence assisted the jury in weighing the testimony. *See In re Commitment of Ramsey*, No. 09-14-00304-CV, 2015 Tex. App. LEXIS 2844, at \*23 (Tex. App.—Beaumont Mar. 26, 2015, pet. denied) (mem. op.). The trial

judge could also reasonably conclude the expert's testimony was not unfairly prejudicial. *See In re Commitment of Ford*, No. 09-11-00425-CV, 2012 Tex. App. LEXIS 2221, at \*\*4-5 (Tex. App.—Beaumont Mar. 22, 2012, no pet.) (mem. op.); *Day*, 342 S.W.3d at 199. Nevertheless, as noted earlier, the trial court provided the jury with a limiting instruction. We presume the jury followed the trial court's limiting instruction and the jury charge. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 771 (Tex. 2003); *Day*, 342 S.W.3d at 199. On this record, we cannot conclude that the trial court erred in overruling the objection or that the trial court's limiting instruction combined with the instruction within the jury charge was insufficient. We overrule Luna's fourth issue.

Admission of Treatment Provider's Testimony

In his fifth issue, Luna argues that the trial court erred in allowing testimony of Luna's treatment provider, Joseph Brown. In particular, Luna argues that Brown only testified as to Luna's sex offender treatment program, and because Brown's testimony did not address whether Luna had a behavioral abnormality, the trial court should have struck the testimony because it was not helpful and it was more prejudicial than probative. At the conclusion of Brown's testimony, Luna moved to strike the testimony on the "grounds of Texas Rules of Evidence 701 and 702, and that is, it is not helpful to determine the fact at issue[,]" and also on the grounds

that it was more prejudicial than probative. The trial court overruled the motion to strike and the objections.

At trial, Luna testified that he was not going to be able to complete his current sex offender treatment within the nine-month time period and that he had not successfully presented his sex offense synopsis in treatment as required. Luna also admitted that he had received some write-ups in connection with his treatment for missing group sessions. Dr. Arambula testified regarding Luna's treatment, concluding that "he's been slow in getting his assignments done, his insight is not great, sometimes there are struggles with how much he's revealing in group. So it hasn't been real positive yet." Even if the trial court erred in admitting Brown's testimony, his testimony was cumulative of other testimony properly admitted at trial and therefore harmless. *See Reliance Steel*, 267 S.W.3d at 873. Based on the record before us, we conclude that the admission of Brown's testimony probably did not cause the rendition of an improper judgment. Tex. R. App. P. 44.1(a). We overrule Luna's fifth issue on appeal. We affirm the trial court's judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on May 21, 2015
Opinion Delivered October 15, 2015

Before McKeithen, C.J., Horton, and Johnson, JJ.