**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-15-00091-CV**
_____

**IN RE COMMITMENT OF CARL EUGENE SMITH**

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 14-07-07527 CV**

**MEMORANDUM OPINION**

The State of Texas filed a petition to commit Carl Eugene Smith (Smith) as a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2014) (SVP Act). A jury found that Smith is a sexually violent predator, and the trial court rendered a final judgment and an order of civil commitment. Smith timely filed a notice of appeal. In two appellate issues, Smith challenges the legal and factual sufficiency of the evidence supporting the jury's finding that he is a sexually violent predator. We affirm the trial court's judgment.

EVIDENCE AT TRIAL

Admissions and Testimony by Smith

The jury heard Smith's responses to the State's requests for admissions wherein Smith admitted he had not completed or participated in sex offender treatment while in prison, and Smith admitted to having received at least four major and five minor disciplinaries while in prison. The State then called Smith as an adverse witness.

Smith testified that, at the time of trial, he was incarcerated for two counts of indecency with a child by contact. He agreed that one offense for which he was convicted allegedly occurred on or about May 22, 1990, and that the victim was a seven-year-old girl, B.S.,[1] who was Smith's neighbor at the time. Smith agreed he was convicted of fondling B.S.'s vagina, but he stated he "plea-bargained to get this done." Smith testified that he does not recall if it was alleged that he touched another girl's vagina, but Smith alleged that B.S.'s parents said he molested their daughter because Smith would not buy cocaine for the parents as they had asked him to do. Smith told the jury that he had been drinking that night, "[m]aybe a couple of six-packs[,]" although he acknowledged that in his deposition he had

_____

[1] We identify the victims by using initials. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims the "right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

stated it was "[t]hree six-packs." He agreed that he received seven years' probation for the offense against B.S. Smith also stated that he did not receive any sex offender treatment while he was on probation.

Smith testified that he was later convicted for two counts of indecency with a child for offenses against two boys, M.E. and E.A., but he said "I didn't do it, but I was accused of it." Smith agreed that M.E. was about four years old and E.A. was about five years old at the time, and that Smith lived in a garage apartment behind the boys' home. Smith denied that he was then living with a fourteen-year-old boy, J.A., and stated that he thought J.A. was sixteen years old. Smith also denied fondling M.E. and E.A., and he denied showing them "naked movies[.]"According to Smith, M.E. and E.A.'s parents said he molested M.E. and E.A. in order to steal everything Smith owned, including his "brand-new color T.V." Smith stated that he plea-bargained for a sentence of five years in prison for the offenses against M.E. and E.A.

Smith testified that he has never registered as a sex offender. He further stated that, when the police came to his house regarding the offenses against M.E. and E.A., he left and stayed with his uncle for nine months. Smith explained that he was later arrested when he wrecked his truck. According to Smith, he adjusted well to being in prison. But, Smith admitted that he received five major and four

3

minor disciplinaries in prison for refusing to work, for using vulgar language, for threatening to harm another offender, for refusing a housing assignment, for possessing contraband, and for assaulting an offender without a weapon.[2] Smith explained that he received one disciplinary for his reaction to his cellmate stealing his things because he told the prison staff "[y]ou need to move me out or I'm going to kill him." Smith explained that "[he] wasn't going to kill him, but, yeah, it's just something you had to do to let them understand, hey, something has got to give, you know."

Smith testified that he had never been in sex offender treatment, but that he "tried to get sex offender treatment when [he] was on probation . . . [t]hey wouldn't give it to [him]." Smith also agreed that he said in his deposition that he did not need sex offender treatment because "[i]f [he] ain't did nothing, [he] don't need no treatment." He further explained that he would have taken the treatment if it would help him get parole early. When asked at trial whether he had any kind of sex offending problem that needs to be addressed, Smith responded "[n]o, I don't." He denied having answered the same question in his deposition "No, not really. No, not anymore. I do not have no problem no more." Smith denied feeling

---

[2] We note that Smith's testimony that he had five major and four minor disciplinaries conflicts with his response to the State's request for admissions, namely, that he had four major and five minor disciplinaries.

"compelled in any way[]" to have sex with children. He testified that he was currently taking Zoloft for anxiety and depression and to help him "function."

Smith stated that, before he was in prison, he "did drugs," "ran the roads," and "ran with wild women." He explained that he would get drunk every day, drinking one or two six-packs a day, and that he also used marijuana, LSD, and crack cocaine. He also testified that he violated his probation by smoking pot, even though he knew he could go to prison if he were caught. He further explained that he had a year of alcohol and drug treatment classes.

Testimony of Dr. Clayton

Dr. Lisa Clayton, a board-certified forensic psychiatrist, testified for the State. Based on her training and experience, the records she reviewed, and her interview with Smith, Clayton believes Smith suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

Clayton explained her methodology for assessing a behavioral abnormality, which she testified is the methodology followed by experts in her field who do forensic evaluations. In reaching her opinion, Clayton reviewed legal records associated with Smith's convictions, including police reports and the facts of his sexual offenses, medical records, prison records, a previous psychological evaluation of Smith including the results of assessment instruments, her face-to-

5

face evaluation of Smith, and deposition testimony of Smith and of Dr. Tennison (who served as a defense expert). Clayton explained that she relied on the records of Smith's sexual and nonsexual offenses in order to have "a good clear history of the person's overall personality and law abidingness[.]"

Clayton testified that Smith's first conviction was for an offense he committed in 1990, wherein Smith was playing with the seven-year-old victim, B.S., and another little girl in B.S.'s bedroom and he rubbed the girls' vaginas. Clayton said that B.S. made an outcry to her mother about what Smith had done to B.S. and to the other girl after the mother noticed redness and swelling when she was bathing B.S. Clayton said that, after B.S. was examined at a hospital, the family brought a charge against Smith. Clayton testified that when she asked Smith about this offense, he told her

> . . . he had just been over at [B.S.'s] house, and he was asked to look at a hole in the wall in the girl's bedroom, and that he had been drinking and he spilled some beer and they got mad at him and he got mad and he left.
>
> . . . .
>
> . . . [T]he reason [B.S.'s] parents had said that he did that was because he wouldn't go buy . . . 2 ounces of cocaine or 2 grams[.] . . . that they were retaliating against him because he wouldn't go buy cocaine for -- from them.

Clayton explained that Smith tested positive for marijuana while on probation for this offense, and Clayton considered this significant because "when you can't even follow the rules when you're on supervision in the free world, it shows an inability to control his behavior."

Clayton also described Smith's offenses against M.E. and E.A., explaining that Smith was a friend of the boys' parents and Smith was a babysitter for the boys. Clayton said that M.E. told M.E.'s mother that Smith taught M.E. to "play with his turtle[]," that Smith had put his hand and mouth on M.E.'s penis, that Smith tried to make M.E. and E.A. "jump on each other," and that "the 14-year-old boy that was living with [Smith] and together with Mr. Smith had messed with both [childrens'] penises." Clayton said the offenses against M.E. and E.A. happened "on multiple occasions[]" and that Smith would also watch pornography with the boys. Clayton testified that Smith told her "the parents had said these false charges against him because they -- they wanted his belongings." According to Clayton, it appeared to her that Smith's conduct escalated after his offense against B.S. and that Smith was grooming M.E. and E.A.

Clayton described Smith's adjustment to prison as "poor[,]" noting that he had threatened to assault or kill people and that he violently attacked another inmate for no apparent cause. Clayton stated she did not regard such

7

aggressiveness as typical for someone with Smith's offense history. Clayton explained that Smith's institutional adjustment was relevant to a behavioral abnormality evaluation because it is important to know about problems following rules and any "tendency towards violence when something doesn't go their way."

Clayton diagnosed Smith with "pedophilic disorder, nonexclusive type, sexually attracted to both male and female, adult antisocial behavior, alcohol use disorder currently in remission due to incarceration, and adjustment disorder with depressed mood, currently in remission due to his treatment with antidepressant medication." Clayton noted that a forensic psychologist had also diagnosed Smith with pedophilia or pedophilic disorder and adult antisocial behavior. She testified that research has shown that individuals such as Smith who have acted out against both girls and boys have a higher likelihood to reoffend and pedophilic disorder "is chronic and lifelong[.]" Clayton explained that adult antisocial behavior together with pedophilic disorder is a bad combination because such a person cannot follow rules or be socially responsible and, coupled with sexual deviancy, it makes reoffending much more likely. Clayton testified that Smith showed certain psychopathic traits or behaviors, including lack of remorse, failure to accept responsibility, and enjoyment of aggression and physical violence. She also noted that Smith "seems to be getting more aggressive as he gets older." Clayton

explained that although Smith's alcohol use is in remission due to his incarceration, because alcohol is a disinhibitor, a person who is trying not to act on pedophilic urges may lose the ability to control his behavior after he has a couple of beers.

Clayton reviewed the results of the Static-99R and the Hare PCL-R administered to Smith by a psychologist. Clayton testified that although Smith's results on the Static-99R reflected a moderate risk of reoffending, Clayton believed Smith is actually at a high level of risk to reoffend. Clayton explained the Static-99R does not take into account conduct for which a person was not prosecuted, the number of times he may have sexually assaulted a child, or his issues with alcohol, aggressive or violent tendencies, or escalation and grooming behavior. According to Clayton, Smith's score on the Hare PCL-R was indicative of some psychopathic traits or behaviors.

Clayton testified that the records she reviewed gave no indication that Smith had received any sex offender treatment. Clayton does not think that Smith feels any remorse or guilt and he has never indicated he needs sex offender treatment. Furthermore, Smith did not show any good insight into why he committed his sex offenses. Clayton testified that Smith "is in complete denial of his . . . sexual

offending and doesn't take any responsibility and pretty much blames everybody else for his problems."

According to Clayton, Smith's risk factors include sexual deviancy, antisocial personality traits, the lack of sex offender treatment, having had both male and female victims, a history of grooming behavior, a history of violent behavior, the length of time over which the offending behavior occurred, a lack of acceptance of responsibility for the offenses, and violating probation. Clayton also stated that Dr. Murrie, a forensic psychologist, had identified sexual deviance and "an impulsive antisocial lifestyle" as risk factors for Smith. Clayton did not identify any positive or protective factors for Smith.

Testimony of Dr. Tennison

Dr. John Tennison, a psychiatrist who works with addiction disorders and forensic evaluations, testified for Smith. Tennison reached the opinion that Smith does not have a behavioral abnormality. He explained that, in forming his opinion, he relied on the report of the Multidisciplinary Team, results of Static-99R and PCL-R testing, records of Smith's sexual offenses, records of interviews of Smith, medical records, Smith's nonsexual criminal history, substance abuse history, depositions of Smith and of Dr. Clayton, and his own interview with Smith. Tennison also explained that he consulted various peer-reviewed articles in

10

formulating his opinion. Tennison agreed that the method he used in conducting his investigation and arriving at his opinion was accepted in the field of forensic psychiatry for use in this type of case and is drawn from peer-reviewed sources.

Tennison testified that in his interview with Smith, he covered Smith's offenses, his past substance use, and his institutional adjustment. Tennison found Smith to be forthcoming and cooperative in the interview, although Smith disputed the charges against him. Tennison said that Smith described himself as heterosexual and that Smith denied any sexual attraction to children. Tennison stated that Smith described "significantly greater than average alcohol use at the time of the offenses." According to Tennison, Smith's disciplinaries in prison "did not have anything to do with sexually inappropriate behavior[]" but rather "were more of a self-defense type of situation."

Tennison testified that he diagnosed Smith with an alcohol use disorder in remission. However, Tennison does not regard Smith's substance abuse history as relevant to whether Smith has a behavioral abnormality. Tennison explained that he considered the possibility of pedophilic disorder and could not rule it out, but he did not have enough information to make that diagnosis definitively. Tennison stated that he did not find any evidence that Smith is sexually deviant today, although he did agree that Smith's past offenses were deviant acts.

11

Tennison testified that he reviewed results of a Static-99R completed by a psychologist. Tennison explained that Smith received a score of "2" which Tennison explained "is equivalent to about a 1.8 recidivism risk in the next five years[]" and which he characterized as a "lower risk of committing an offense as compared to the average Texas offender." According to Tennison, the fact that Smith had two male victims "slightly" elevates Smith's Static-99 score, but "[n]ot by much[.]" Tennison stated that Smith's score on the PCL-R was "15 which is well below the psychopathy realm."

Tennison testified that having victims who are unrelated children makes a "slightly" greater risk of recidivism. According to Tennison, research had not shown that denial or lack of remorse was a risk factor for reoffending. Tennison stated that Smith's social relationship history is generally positive, that Smith was still in contact with his sister and mother, and that Smith has "more of a social support structure and social connectedness than . . . some other inmates otherwise have." Tennison also testified that the fact that Smith has not been motivated to enter sex offender treatment is not a risk factor for future recidivism, and adult antisocial behavior is "[n]ot necessarily[]" a risk factor.

SUFFICIENCY OF THE EVIDENCE

In two issues, Smith contends that the evidence is legally and factually insufficient to support the jury's verdict. Smith argues that the State's expert had no evidence other than Smith's prior convictions to support her conclusion that Smith has a behavioral abnormality and that the State failed to distinguish Smith "as someone who is dangerous beyond his control and not just a typical criminal recidivist."

Under a legal sufficiency review, we assess all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find, beyond a reasonable doubt, the elements required for commitment under the SVP statute. *In re Commitment of Mullens*, 92 S.W.3d 881, 885 (Tex. App.—Beaumont 2002, pet. denied). It is the factfinder's responsibility to fairly resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.* at 887. Under a factual sufficiency review, we weigh the evidence to determine "whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that would compel ordering a new trial." *In re Commitment of Day*, 342 S.W.3d 193, 213 (Tex. App.—Beaumont 2011, pet. denied).

13

In an SVP case, the State must prove beyond a reasonable doubt that a person is a sexually violent predator. Tex. Health & Safety Code Ann. § 841.062(a) (West 2010). A person is a "sexually violent predator" if he is a repeat sexually violent offender and suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *Id.* § 841.003(a) (West Supp. 2014). A "behavioral abnormality" is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2) (West Supp. 2014). "A condition which affects either emotional capacity or volitional capacity to the extent a person is predisposed to threaten the health and safety of others with acts of sexual violence is an abnormality which causes serious difficulty in behavior control." *In re Commitment of Almaguer*, 117 S.W.3d 500, 506 (Tex. App.—Beaumont 2003, pet. denied).

The jury was entitled to draw reasonable inferences from basic facts to determine ultimate fact issues, and to resolve conflicts and contradictions in the evidence by believing all, part, or none of the witnesses' testimony. *In re Commitment of Barbee*, 192 S.W.3d 835, 842 (Tex. App.—Beaumont 2006, no pet.). "[P]roof of serious difficulty in controlling behavior" is required to civilly

14

commit a defendant under the SVP Act. *Kansas v. Crane*, 534 U.S. 407, 413 (2002). Smith's current difficulty in controlling his behavior can be inferred from his past behavior, his own testimony, and Dr. Clayton's testimony. *See In re Commitment of Burnett*, No. 09-09-00009-CV, 2009 Tex. App. LEXIS 9930, at *13 (Tex. App.—Beaumont Dec. 31, 2009, no pet.) (mem. op.). Dr. Clayton's opinion that Smith has a behavioral abnormality, as defined by the SVP Act, necessarily entails a related finding that he has "serious difficulty controlling his behavior." *See Almaguer*, 117 S.W.3d at 505-06; *see also In re Commitment of Browning*, 113 S.W.3d 851, 862-63 (Tex. App.—Austin 2003, pet. denied).

The jury heard Smith agree that he had been convicted of sexual offenses against a seven-year-old girl, a four-year-old boy, and a five-year-old boy. The jury heard Smith's admissions that he had not participated in sex offender treatment and that he had received at least four major and five minor disciplinaries while in prison. In addition to hearing the details of Smith's offenses, the jury also heard Smith's own testimony concerning his explanations for his convictions, his prison disciplinaries, and his substance abuse history. The jury heard Dr. Clayton's opinion that Smith's risk factors for reoffending include his sexual deviance, his pedophilia, his antisocial behavior, his prior substance abuse, his lack of sexual offender treatment, his selection of both male and female victims for his sexual

15

offenses, his history of grooming behavior, and his failure to accept responsibility for his offenses. Considering all of the evidence in the light most favorable to the verdict, we conclude the jury could reasonably find beyond a reasonable doubt that Smith has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See Mullens*, 92 S.W.3d at 887. The record does not reflect a risk of injustice that compels granting a new trial. *See Day*, 342 S.W.3d at 213. We overrule issues one and two and affirm the trial court's judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on November 3, 2015
Opinion Delivered November 25, 2015

Before Kreger, Horton, and Johnson, JJ.

16